1  Steven L. Hoard (Texas Bar No. 09736600) (*pro hac vice*)
   shoard@mhba.com
2  MULLIN HOARD & BROWN, L.L.P.
3  P. O. Box 31656
   Amarillo, Texas 79120-1656
4  Tel: (806) 372-5050/Fax: (806) 372-5086

5  Steven Jay Katzman (California Bar No. 132755)
   skatzman@bmkattorneys.com
6  BIENERT, MILLER & KATZMAN, PLC
7  903 Calle Amanecer, Suite 350
   San Clemente, California 92673
8  Tel: (949) 369-3700/Fax: (949) 369-3701

9  Leonard J. DePasquale (Rhode Island Bar No. 4753) (*pro hac vice*)
   ldepasquale@fdic.gov
10 Counsel, FDIC Legal Division, VS-B-7058
11 3501 North Fairfax Drive
   Arlington, VA 22226-3500
12
13 Attorneys for Plaintiff
   FEDERAL DEPOSIT INSURANCE CORPORATION
14 as Receiver of Washington Mutual Bank

15            IN THE UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17

18 | FEDERAL DEPOSIT INSURANCE        | Case No.: SACV11-706 DOC (ANx)
   | CORPORATION, as Receiver of      | *Related to* Case No.: SACV11-704 DOC
19 | Washington Mutual Bank,          |
                                      | **OPPOSITION TO DEFENDANTS'**
20 |          Plaintiff,              | **JOINT MOTION TO DISMISS**
                                      | **COMPLAINT**
21 |                                  |
22 | v.                               | Date:  September 12, 2011
                                      | Time:  8:30 a.m.
23 | LSI APPRAISAL, LLC; FIDELITY     | Dept:  9D
   | NATIONAL INFORMATION             |
24 | SERVICES, INC.; LENDER           |
   | PROCESSING SERVICES, INC.;       | Complaint filed:  May 9, 2011
25 | LENDER PROCESSING SERVICES,      |
   | LLC; LPS PROPERTY TAX            |
26 | SOLUTIONS, INC., f/k/a FIDELITY  |
   | NATIONAL TAX SERVICE, INC.; LSI  |
27 | TITLE COMPANY;                   |
   | and LSI TITLE AGENCY, INC.,      |
28 |                                  |
   |          Defendants.             |

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 3

III.    STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(B)(6) ............... 4

IV.     ARGUMENT.......................................................................................................... 5

    A.      The FDIC's Tort Claims Are Not Barred by the Economic Loss
        Rule..................................................................................................................... 5

        1.      The economic loss rule does not apply to the FDIC's tort
            claims. ........................................................................................................... 5

        2.      LSI acknowledged in the Agreement that it owed tort and
            contract   duties to WaMu. ......................................................................... 6

        3.      Notwithstanding the terms of the Agreement, LSI owed
            independent tort duties to WaMu................................................................ 7

        4.      LSI assumed liability for the performance of the appraisers'
            duties   to WaMu under the terms of the Agreement......................... 10

        5.      The special relationship exception to the economic loss rule
            applies   to the FDIC's claims.............................................................. 10

        6.      The cases upon which LSI relies to support its assertion of
            the    economic loss rule are not on point. ............................................ 11

        7.      Alternative theories of recovery are permissible under the
            freedom   of election rule. ....................................................................... 13

    B.      The FDIC's Breach of Contract Claims Are Not Subject to the
        Arbitration Clause Contained in Exhibit B to the Agreement. ..................... 14

        1.      Standards governing the enforceability of arbitration
            provisions. .................................................................................................. 14

        2.      By its terms, the arbitration clause is narrow in scope. ....................... 16

        3.      The Agreement demonstrates that it was the intention of the
            parties that claims for breach of provisions in the Agreement
            other   than Exhibit B would not be subject to arbitration.................. 18

i

1    **TABLE OF CONTENTS:** (continued)                                                    **Page(s)**

2          C.    The Performance Guaranty Agreement Is an Unconditional
3                 Guaranty. .......................................................................................................20

4          D.    The FDIC Has Adequately Pled Its Alter Ego Claims..................................22

5          E.    Should the Court Grant Any Part of the Defendants' Motion to
6                 Dismiss,  Plaintiff Requests Leave to Amend Its Complaint........................24

7    V. CONCLUSION ..............................................................................................................25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Aas v. Superior Court*,
   24 Cal. 4th 627 (2000) ................................................................. 12

*Ashcroft v. Iqbal*,
   ___ U.S. ___, 129 S. Ct. 1937 (2009).......................................... 4

*Association of Apt. Owners of Newtown Meadows ex re. its Bd. of Dir. v.*
   *Venture 15, Inc.*, 167 P.3d 225 (Haw. 2007) .............................. 13

*Ballreich Bros., Inc. v. Criblez*,
   2010 WL 2735733 (Ohio App. July 12, 2010).......................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................... 4

*Bell v. Public Employees Ret. Bd.*,
   239 Or. App. 239 P.3d 319 (2010) ............................................ 13

*Breggs v. Eden Council for Hope and Opportunity*,
   19 Cal. 4th 1106, (1999) ........................................................... 10

*Brennan v. Bally Total Fitness*,
   153 F. Supp 2d. 408 (S.D.N.Y. 2001)....................................... 20

*Brennan v. Global Safety Labs, Inc.*,
   WL 2234830 (N.D. Okla. May 29, 2008).................................. 15

*Brown Field Aviation Park LLC v PB Aviation*,
   2005 WL 1684689 (Cal. App. 2005) ......................................... 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ............................................. 16, 17

*City of Atlanta v. Benator*,
   2011 WL 2623839 (Ga. App. July 6, 2011) .............................. 13

*Clement v. American Greetings Corp.*,
   636 F. Supp. 1326 (S.D. Cal. 1986).......................................... 22

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES**: (continued)                <u>**Page(s)**</u> |

*Comunale v. Traders & Gen. Ins. Co.*,
  50 Cal.2d 6548 P.2d 198 (Cal. 1958)............................................................. 14

*Connor v. Great Western Sav. & Loan Assoc.*,
  69 Cal. 2d 850 (1968) .................................................................................... 22

*Cooper v. Berkshire Life Ins. Co.*,
  810 A.2d 1045 (Md. App. 2002) ..................................................................... 13

*County of Santa Clara v. Hayes Co.*,
  43 Cal. 2d 615 (Cal. 1954)............................................................................. 14

*Cox v. Ocean View Hotel, Corp.*,
  533 F. 3d 1114 (9th Cir. 2008) ....................................................................... 14

*Crisci v. Security Ins. Co. of New Haven Conn.*,
  426 P.2d 173 (Cal. 1967) ............................................................................... 14

*Cummings v. Fedex Ground Package Sys. Inc.*,
  404 F.3d 1258(10th Cir. 2005) ....................................................................... 15

*DOE v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) .......................................................................... 24

*Duffin v. Idaho Crop Imp. Ass'n*,
  895 P.2d 1195 (Idaho 1995) ........................................................................... 13

*Durkee v. City of Plattsburgh*,
  464 N.Y.S.2d 986 (N.Y. Sup. Ct. 1983)........................................................... 17

*Eaton Corp. v. Trace Carolina Plains*,
  350 F. Supp. 2d 699 (D.S.C. 2004) ................................................................ 13

*Erickson v. Pardus*,
  551 U.S. 89 (2007)............................................................................................ 4

*Estate of Beach*,
  15 Cal. 3d 623 (1975) ....................................................................................... 9

<u>OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT</u>

**TABLE OF AUTHORITIES: (continued)**       **Page(s)**

*Farmer & Filer, Assoc. v. Guilford Transp. Ind.*,
   2007 WL 2840376 (Mass. Super. Sept. 7, 2007)............................................. 13

*Fayer v. Vaughn*,
   No. 10-15520, ____ F.3d ___, WL 1663595 (9th Cir. May 4, 2011) ..................... 4, 23

*FDIC v. Baker*,
   1991 WL 329757 (C.D. Cal. Jan. 23, 1991) ................................................... 9

*FDIC v. Freestand Financial Holding Corp., et al.*,
   Case No. SACV 10-437 DOC (RNBx) (Dkt. No. 48)...................................... 23

*Forman v. Davis*,
   371 U.S. 178 (1962)................................................................................. 24

*Gagne v. Bertran*,
   43 Cal. 2d 481 (1954) ........................................................................... 9, 10

*Giles v. GMAC*,
   494 F.3d 86574 (9th Cir. 2007) .................................................................. 6

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
   __ U.S. __, __, 130 S.Ct. 2847, 2857 (2010)................................................ 14

*Honigsbaum's, Inc. v. Stuyvesant Plaza, Inc.*,
   577 N.Y.S.2d 165 (N.Y. Sup. Ct. 1991)...................................................... 21

*Iconix Brand Group Inc. v. Bongo Apparel Inc.*,
   2008 WL 2695090 (S.D.N.Y. 2008)........................................................... 12

*In re Currency Conversion Fee Antitrust Litigation*,
   265 F. Supp. 2d 385 (S.D.N.Y. 2003)........................................................ 23

*In re Trade Partners*,
   2008 WL 3875396 (W.D. Mich. Aug. 15, 2008)........................................... 13

*Indianapolis-Marion Cty Public Library v. Charlier Clark & Linard, P.C.*,
   929 N.E.2d 722 (Ind. 2010) .................................................................... 13

**TABLE OF AUTHORITIES: (continued)**                                    **Page(s)**

*Irving v. Ebix, Inc.,*
   2010 WL 3168429 (S.D. Cal. Aug. 10, 2010) ........................................ 15, 16

*Israel v. Chabra,*
   537 F.3d 863 (2d Cir. 2008) .......................................................... 21

*J'Aire Corp. v. Gregory,*
   24 Cal. 3d 799 (1979) ................................................................ 10

*Kent v. Bartlett,*
   49 Cal. 3d 724 (1975) ................................................................. 9

*Ladner v. AmSouth Bank,*
   32 So. 3d 99 (Fla. App. 2009) ........................................................ 13

*Levinson v. Mass. Mutual Life Ins. Co.,*
   2006 WL 3337419 (E.D. Va. Nov. 9, 2006) .............................................. 13

*Liang v. Huang,*
   679 N.Y.S.2d 210 (N.Y Sup. Ct.1998) ................................................. 20

*Louis Drefus Negoce S.A. v. Blystad Shipping & Trading Inc.,*
   252 F.3d 218 (2d Cir. 2001) ......................................................... 15

*Luna v. Kemira Specialty, Inc.,*
   575 F. Supp. 2d 1166 (C.D. Cal. 2008) ............................................... 15

*Meadows v. Emett & Chandler,*
   99 Cal. App. 2d 466 (1950) .......................................................... 22

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.,*
   708 F.2d 1458 (9th Cir. 1983) ....................................................... 15

*Mesquite Lake Associates v. Lurgi Corp.,*
   754 F. Supp. 161 (N.D. Cal. 1991) ................................................... 15

*Mirzaib v. Matossian,*
   2004 WL 2260611 (Cal. App. 2004) ................................................... 12

**TABLE OF AUTHORITIES: (continued)** | **Page(s)**

*Mission Oaks Ranch, Ltd. v. County of Santa Barbara,*
   65 Cal. App. 4th 713 (1998) ............................................................... 10

*Morgan Stanley High Yield Securities, Inc. v. Seven Circle Gaming Corp.,*
   269 F. Supp. 2d 206 (S.D.N.Y. 2003) ............................................. 21

*Motor City of Jacksonville v. South East Bank,*
   83 F.3d 1317 (11th Cir. 1996) ........................................................ 13

*North Am. Chem. Co. v. Superior Ct.,*
   59 Cal. App. 4th 764 (1997) ........................................................ 8, 12

*Nanosolutions, LLC v. Prajza,*
   2011 WL 2469708 (D.D.C. June 2, 2011)........................................ 16

*National Westminster Bank v. George A. Fuller Co.,*
   544 N.Y.S.2d 607 (N.Y. App. Div. 1989) ....................................... 17

*Neilson v. Union Bank of Cal.,*
   290 F. Supp. 2d 1101 (C.D.Cal. 2003) ........................................... 23

*Neumann v. Carlson Envtl., Inc.,*
   429 F. Supp. 2d 946 (N.D. Ill. 2006)............................................... 13

*Neel v. Magana Oleny, Levy, Cathcart & Gelfand,*
   6 Cal. 3d 176 (1971) ....................................................................... 10

*Norins Realty Co. v. Consolidated Abstract & Title Guaranty Co.,*
   80 Cal. App. 2d 879, 883 (1947) .................................................... 22

*Oracle USA Inc. v. Global Services,*
   2009 WL 2084154 (N.D. Cal. July13, 2009) .................................. 12

*Owen v. Option One Mortg. Corp.,*
   2011 WL 3211081 (Tex. App. July 28, 2011)................................. 13

*Pena v. Opic,*
   2010 WL 1998152 (Ariz. App. May 18, 2010) ............................... 13

1

**TABLE OF AUTHORITIES: (continued)**         **Page(s)**

2

*Pittsburg & S.R. Co. v. Central Trust Co. of New York,*

3
   141 N.Y.S. 66 (N.Y. App. Div. 1913) ............................................................ 20

4

*Public Serv. Enter. Group, Inc. v. Philadelphia Elec. Co.,*

5
   722 F. Supp. 184 (D.N.J. 1989) .................................................................... 13

6

*Remy, Inc. v. Laxton,*

7
   600 F.3d 1138 (9th Cir 2010) ......................................................................... 5

8

*Robinson Helicopter Company, Inc. v. Dana Corp.,*

9
   34 Cal. 4th 979 ( 2005) ....................................................................... passim

10

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.,*

11
   806 F.2d 1393(9th Cir. 1986) ...................................................................... 24

12

*Schwarzkopf v. Brimes,*

13
   626 F.3d 1032 (9th Cir. 2010) ..................................................................... 22

14

*Silicon Knights v. Epic Games,*

15
   2011 WL 1134453 (E.D.N.C. Jan. 25, 2011) ............................................. 13

16

*Simula, Inc. v. Autoliv, Inc.,*

17
   175 F.3d 716 (9th Cir. 1999) .................................................................. 16, 17

18

*StreamCast Networks v. IBIS, LLC,*

19
   2006 WL 5720345 (C.D. Cal. May 2, 2006) ................................................ 9

20

*Sunridge Dev. Corp. v. RB & G Eng'g, Inc.,*

21
   230 P.3d 1000 (Utah 2010) ......................................................................... 13

22

*Teamsters Local 315 v. Union Oil Co. of Cal.,*

23
   856 F.2d 1307 (9th Cir. 1988) ..................................................................... 15

24

*Terracon Consultants Western, Inc. v. Mandalay Resort Group,*

25
   206 P.3d 81 (Nev. 2009) .............................................................................. 13

26

*Torres v. D'Alesso,*

27
   910 N.Y.S. 2d 1 (N.Y. App. Div. 2010) ...................................................... 21

28

1 | **TABLE OF AUTHORITIES: (continued)** | **Page(s)**

*Town of Alma v. AZCO Constr., Inc.,*
    10 P.3d 1256 (Colo. 2000) ............................................................................ 13

*Tracer Research Corp. v. National Envtl. Services Co.,*
    42 F.3d 1292 (9th Cir. 1994) ................................................................... 14, 15

*Turpin v. Sortim,*
    31 Cal. 3d 220 (1982) ................................................................................... 9

*United Guar. Mortg. v. Countrywide Fin.,*
    660 F. Supp. 2d 1163 (C.D. Cal. 2009) ........................................................ 6

*Valley Farmers' Elevator v. Lindsay Bros. Co.,*
    380 N.W.2d 874 (Minn. App. 1986) ............................................................ 13

*Wady v. Provident Life and Accident Ins. Co.,*
    216 F. Supp. 2d 1060 (C.D. Cal. 2002) ...................................................... 23

*Zeigler v. Sony Corp. of Am.,*
    849 A.2d 19 (Conn. Super. Ct. 2004) .......................................................... 13

 **Rules**
Federal Rule of Civil Procedure 8 .......................................................... 3, 4, 23


 **Regulations**
Cal. Code. Reg., tit. 10, § 3702 ................................................................... 11

Hawaii Revised Statute 663-1.2 ................................................................... 13


**Other Authorities**

2 Miller & Starr, *California Real Estate*, § 4:64. (3d ed. 2000) ....................... 11

Uniform Standards of Professional Appraisal Practice ...................... 1, 2, 3, 9, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a professional malpractice and breach of contract case involving 220 specific appraisal services provided by LSI Appraisal, LLC ("LSI") to Washington Mutual Bank ("WaMu").    Each of the 220 appraisals and field reviews at issue in this lawsuit, all of which relate to single family residences, contain multiple egregious violations of the Uniform Standards of Professional Appraisal Practice ("USPAP"), as well as the appraisal standards of FNMA, FHLMC, and other mortgage investors. Examples of the principal USPAP violations include using non-comparable home sales, ignoring home sales that actually were comparable, and failing to consider the sales history and listing information for the subject property – all for the improper purpose of supporting the substantially inflated values stated in the appraisals that LSI provided to WaMu.    These violations are not mere mistakes; they constitute a degree of carelessness that rises to the level of at least gross negligence.    Based on this wrongful conduct, the Federal Deposit Insurance Corporation ("FDIC") filed its complaint against the Defendants on May 9, 2011.

Defendants have now moved to dismiss Count I (Gross Negligence) and argue that the economic loss rule bars the FDIC's tort claims because they arise out of the appraisal services[1] that are also the subject of the FDIC's claim in Count II for breach of the Appraisal Outsourcing Services Agreement (the "Agreement").    The Defendants' argument fails because the economic loss rule does not apply to the tort claims alleged in Count I.    The Defendants agreed to provide WaMu with professional appraisal services that gave rise to independent tort duties making the economic loss rule inapplicable here.

---

[1] Twelve of the 220 appraisal services provided by LSI to WaMu were provided prior to October 16, 2006, when the Agreement was executed.    The damages resulting from those twelve appraisal services total $8,350,308.76.    The FDIC's claims relating to these twelve appraisal services are not covered by the Agreement and were purposefully excluded from Count II, the breach of contract claim against LSI.

1    The Agreement expressly memorializes the parties' understanding regarding the existence
2    of those duties.  Furthermore, even if such duties had not been acknowledged in the
3    Agreement, at least two well-recognized exceptions to the economic loss rule apply
4    because both LSI and the individual appraisers it retained owed WaMu the duties of
5    professional persons and service providers that exist under California law independent of
6    the Agreement.  After collecting more than $127 million in fees from WaMu in an
7    eighteen-month period, Defendants now seek to evade responsibility for their gross
8    negligence by claiming that LSI was a mere "appraisal management company that does
9    not perform appraisals, but arranges for independent contractors to do the appraisals."
10   LSI Memo at 1.  Not only is this argument inconsistent with LSI's representations in both
11   Section 15 and Exhibit A of the Agreement, where LSI agreed that all appraisals would
12   conform to USPAP and the other industry standards, it is also contradicted by Section 4.4
13   of the Agreement where LSI expressly agreed that it would "remain responsible and
14   liable" for the conduct of the individual appraisers.

15           LSI has moved to dismiss Count II (Breach of Contract) based on an arbitration
16   clause contained in Exhibit B to the Agreement.  This argument fails because the
17   arbitration clause is not applicable to the claims brought by the FDIC.  The Arbitration
18   clause is expressly limited in scope to claims brought under Exhibit B, which is titled
19   Appraisal Warranty.  The FDIC has not brought any claims under Exhibit B.  All of the
20   FDIC's claims arise out of the breach of other specific provisions of the Agreement
21   (Sections 1(a)(15), 2.1 (a)-(d), 15 and Exhibit A) that are not subject to arbitration.

22           FNTS has moved to dismiss Count III (Breach of Contract) based on the FDIC's
23   alleged failure to satisfy a condition precedent to enforcement of the Performance
24   Guaranty Agreement (the "Guaranty Agreement") – namely that the FDIC "first pursue
25   remedies" against LSI.  This argument fails because other express provisions in the
26   Guaranty Agreement make clear that the guaranty is "unconditional."  Under New York
27   law, unequivocal statements that the guaranty obligation is unconditional control over any
28   inconsistent provision purporting to create a condition precedent.

1  Defendants have moved to dismiss Count IV (Alter Ego, Single Business
2  Enterprise, and Joint Venture) on the basis that the FDIC has not alleged sufficient facts to
3  support the alter-ego-related claims "under state law." LSI Memo at 21. California law,
4  however, does not govern determinations of the adequacy of the FDIC's pleadings. The
5  Federal Rules control and the FDIC has adequately pled the elements of the alter ego-
6  related claims in accordance with the requirements of Federal Rule of Civil Procedure 8.

7  Accordingly, Defendants' Motion to Dismiss should be denied.

## II.  STATEMENT OF FACTS

9  In July 2006, WaMu retained LSI to provide appraisal services for residential
10  properties in all fifty states and the District of Columbia. The relationship and respective
11  rights and obligations between WaMu and LSI were memorialized in the Agreement, a
12  true and correct copy of which is attached as Exhibit A to the Complaint and incorporated
13  herein for all purposes. LSI represented both before and after it entered into the
14  Agreement that each and every appraisal service it provided would conform to USPAP
15  and all applicable industry standards. While in many instances LSI contracted with third-
16  party appraisers to perform the appraisals and field reviews on which WaMu relied, LSI
17  agreed to be "responsible and liable" for the actions of those appraisers. LSI further
18  agreed to insure the competency and qualifications of its appraisers and to conduct a
19  meaningful quality control review of the appraisals.

20  In the Agreement, LSI broadly agreed to "provide Appraisal Services for residential
21  properties." Agreement at 28. "Services" included 15 different types of "Appraisals,"
22  including (i) standard "full appraisals" (known as 1004 appraisals because they are
23  performed on Fannie Mae 1004 forms), which examined the interior and exterior of a
24  residence; and (ii) desk and field reviews (performed to "review" the underlying appraisal
25  for accuracy). *See id.* at 3, 4, and Exhibit A. In exchange for these services, WaMu
26  agreed to pay and did pay LSI more than $127 million in fees.

27  The Agreement also contains an Exhibit B, titled Appraisal Warranty. *Id.* at 37-45.
28  Exhibit B creates an alternative remedy for redressing complaints regarding "Original

Appraisals."   Exhibit B contains an arbitration clause that covers "any claim or controversy arising out of or relating to this Exhibit B, Appraisal Warranty, or the breach thereof . . . ."   The FDIC has not brought any claims for breach of Exhibit B, instead electing to sue for breach of other provisions of the Agreement, as noted above.

## III.   STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(B)(6)

Defendants' motion to dismiss Counts I, II, and III is based on legal arguments and not on the insufficiency of the factual allegations in the Complaint *per se*.   The motion to dismiss Count IV does challenge the sufficiency of the factual allegations with respect to the alter ego claims.

To survive a motion to dismiss based on a challenge to the sufficiency of the factual allegations, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 545); *Fayer v. Vaughn*, No. 10-15520, ___ F.3d ___, 2011 WL 1663595, *2 (9th Cir. May 4, 2011) (citing *Iqbal*, 129 S. Ct. at 1949).   A claim is "plausible" so long as the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   This is an easy-to-clear hurdle because, when ruling on a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Fayer*, 2011 WL 1663595 at *2 (internal citation omitted).

Significantly, the federal notice pleading standard continues to apply after *Twombly*. *See Iqbal*, 129 S. Ct. at 1949 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations' ") (citing *Twombly*, 550 U.S. at 555); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement needs only 'give the defendant fair notice

4

1  of what the . . . claim is and the grounds upon which it rests.' ") (citing *Twombly*, 550
2  U.S. at 555).

3  **IV.   ARGUMENT**

4      **A.   The FDIC's Tort Claims Are Not Barred by the Economic Loss Rule**

5          **1.   The economic loss rule does not apply to the FDIC's tort claims.**

6      The economic loss rule in California[2] was stated in *Robinson Helicopter Co., Inc. v.*
7  *Dana Corp.*:

8        "[W]here a purchaser's expectations in a sale are frustrated because the
9        product he bought is not working properly, his remedy is said to be in
10       contract alone, for he has suffered only 'economic' losses."   This
11       doctrine hinges on a distinction drawn between transactions involving
12       the sale of goods for commercial purposes where economic
13       expectations are protected by commercial and contractual law, and
14       those involving the sale of defective products to individual consumers
15       who are injured in a manner which has traditionally been remedied by
16       resort to the law of torts.

17 34 Cal. 4th 979, 988, 102 P.3d 268, 272, 22 Cal. Rptr. 3d 352, 358 (2005).  The rule has
18 its origin in defective products cases, where damages for economic loss were allowed
19 only for breach of warranties, and recovery in tort was limited to personal injury and
20 damage to property other than the product itself.  Applying the rule to cases not involving
21 a defective product separates it from its logical underpinnings and flies in the face of the

23 [2] The FDIC submits that the law of California governs the application of the economic
24 loss rule (and its exceptions) because the law is essentially the same in all the states where
the appraisals were performed – at least all the states where the economic loss rule is
25 applied at all. *See* footnote 7 below. California law should apply in this instance even if
the law of any other state were in conflict.  Under the "governmental interest" analysis
26 articulated in *Remy, Inc. v. Laxton*, California's interests would be more impaired than
that of any other state, not only because a plurality of the appraisals were performed in
27 California, but also because LSI, the defendant whose conduct gives rise to the tort
claims, has its principal place of business in California. 600 F.3d 1138, 1141-42 (9th Cir.
28 2010).

1     fact that economic damages are routinely recovered in tort actions.[3]

2        Even if the economic loss rule did apply to service agreements, it would not act to
3 bar the tort claims at issue in this lawsuit because LSI expressly acknowledged in the
4 Agreement that it owed independent tort duties to WaMu in addition to its contractual
5 obligations.  In other words, the underpinning of the economic loss rule is the assumption
6 that parties to a contract negotiate the risk of loss occasioned by a breach and that it is
7 appropriate to enforce only such obligations as each party voluntarily assumed.  *Id.* at 989.
8 Here, that underpinning is negated by the express agreement of the parties that LSI owed
9 WaMu tort duties in connection with the appraisal services to be performed under the
10 Agreement.  *See* Section A(2) below.  In addition, the FDIC's claims fall within two of
11 the three well-recognized exceptions to the economic loss rule:  (i) breach of an
12 independent tort duty, and (ii) breach of a duty imposed by a special relationship.[4]  *See*
13 Sections A (3)-(6) below.

       **2.**      **LSI acknowledged in the Agreement that it owed tort and contract**
15                 **duties to WaMu.**

16     Defendants' argument on the economic loss rule is premised entirely on the
17 assumption that "the only duties LSI owed WaMu were created in and arose solely out of
18 the Agreement."  LSI Memo at 14.  This assumption is contradicted by the plain language
19 of the Agreement.  In addition to a comprehensive set of performance requirements and
20 warranties from LSI, the plain language chosen by the parties leaves no doubt that they

---

[3] *See Giles v. GMAC*, 494 F.3d 865, 874 (9th Cir. 2007) (discussing the economic loss rule in various jurisdictions, where the court stated:  "When applied in cases outside the product liability context, the doctrine has produced difficulty and confusion.").

[4] The third exception to the rule arises when defendant's conduct was intentional or was committed knowing that such conduct would cause unmitigateable harm in the form of consequential damages. *United Guar. Mortg. v. Countrywide Fin.*, 660 F. Supp. 2d 1163, 1182 (C.D. Cal. 2009) ("*United Guaranty*").  The FDIC has not alleged that LSI engaged in intentional conduct (although the gross negligence claims demonstrate that LSI engaged in egregious conduct).  The FDIC reserves the right to plead intentional misconduct if such an allegation is warranted after conducting further discovery.

contemplated the existence of common law tort liabilities in addition to the contractual obligations in the Agreement. Section 8.2(a), titled <u>Direct Damages,</u> provides that each party will be liable to the other for any direct damages arising out of or relating to the performance or failure to perform under the Agreement; provided however, that the liability of a party **"…whether based on an action or claim in contract, equity, negligence, tort or otherwise**, will not in the aggregate exceed …" fees paid by WaMu to LSI during a certain period. (Emphasis added). This negates the contention of LSI that there were no duties owed that were not created in the Agreement. Perhaps more telling is section 8.2(c), titled <u>Exclusions</u>, that explicitly excludes liability resulting from the *gross negligence* or willful misconduct of a party from the limitations of liability in subsection 8.2(a). This provision demonstrates that the parties intended not only to preserve their right to sue in tort, but also to insulate these claims from the damage caps in section 8.2(a). In addition, section 16.2 requires that all insurance to be provided by LSI shall be primary and non-contributing except with respect to the sole negligence of LSI. Agreement at 24.

### 3. Notwithstanding the terms of the Agreement, LSI owed independent tort duties to WaMu.

*Robinson* stated the independent tort exception to the economic loss rule as follows: "Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." 34 Cal. 4th at 989.[5] In addition to its contractual duties, LSI owed WaMu an independent duty of due care as a provider of professional services to perform the services LSI agreed to perform without negligence. The California Court of Appeals recognized this independent tort duty exception to the economic loss rule, stating that:

---

[5] LSI quotes from *United Guaranty's* description of the exceptions to the economic loss rule: "These exceptions require the breach of a tort duty apart from the *general duty* not to act negligently," for which the court cites to *Robinson*. 660 F. Supp. 2d at 1181 (emphasis added). However, as shown by the quote above, *Robinson* does not refer to a "general duty not to act negligently as *United Guaranty* states," but to "a duty independent of the contract arising from principles of tort law." 34 Cal. 4th at 989.

7

1

> for over fifty years California has also recognized the fundamental
> principle that accompanying every contract is a common-law duty to
> perform with care, skill, reasonable expedience, and faithfulness the
> thing agreed to be done, and a negligent failure to observe any of these
> conditions is a tort, as well as a breach of the contract. The rule which
> imposes this duty is of universal application as to all persons who by
> contract undertake professional or other business engagements
> requiring the exercise of care, skill and knowledge; the obligation is
> implied by law and need not be stated in the agreement.

*North Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 774, 69 Cal. Rptr. 2d 466, 471 (1997) ("*North American*") (quoting from *Roscoe Moss, Co. v. Jenkins*, 55 Cal. App. 2d 369, 376, 130 P.2d 477, 481 (1942)). *North American* recognized the "important distinction" that the case before it involved services rather than the sale of goods, noting that:

> A contract to perform services gives rise to a duty of care which
> requires that the services be performed in a competent and reasonable
> manner. A negligent failure to do so would be both a breach of
> contract and a tort. … In such a hybrid circumstance, the plaintiff is
> entitled to pursue both legal theories until an occasion for an election
> of remedies arises.

*Id.* at 471. Thus, the economic loss rule does not apply to the FDIC's claims because they involve the negligent performance of services that resulted in foreseeable economic loss. *Id.* at 477.

The FDIC is not contending that LSI is liable in negligence because LSI performed its specific contractual obligations negligently. LSI is liable for negligence because it failed to meet the California independent common law duties for professionals and service providers. It just so happens that the standards for establishing professional negligence (to conform to professional standards used by other members of the profession) are the

8

same standards applicable pursuant to the Agreement that LSI promised to abide by. *See StreamCast Networks v. IBIS, LLC*, 2006 WL 5720345, *9 (C.D. Cal. May 2, 2006) (citing *North American* for the proposition that an omission to perform a contract obligation is not a tort "… unless the omission is also an omission of a legal duty.").

LSI seeks to evade liability by asserting that it served merely as a middleman and did not owe WaMu a duty of care. This argument must fail. When LSI agreed to provide WaMu with a high volume of USPAP-compliant appraisals, through whatever means– *e.g.*, using in-house or outside local appraisers–it undertook a duty of due care. That duty required LSI to ensure that each of the 220 appraisal and desk reviews it provided to WaMu were prepared in accordance with the law and the customs, practices and standards of conduct existing in that industry. *See, e.g., Estate of Beach*, 15 Cal. 3d 623 (1975); *Gagne v. Bertran*, 43 Cal. 2d 481 (1954). In *FDIC v. Baker*, the court noted that a claim against an appraiser requires the plaintiff to show that the appraiser "failed to use such skill, prudence, and diligence as real estate appraisers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." 1991 WL 329757, *2 (C.D. Cal. Jan. 23, 1991) (citing *Smith v. Lewis*, 13 Cal. 3d 349, 356, 188 Cal. Rptr. 621, 625 (1975)). Indeed, LSI posits no legal distinction between itself as a so-called appraisal management company and the appraisers that it hired, supervised, and paid for preparing appraisals and conducting desk reviews.

Imposing the same duties on LSI as exist for appraisers is consistent with the nature of liability for professional negligence. An action for professional negligence is one that is predicated on the breach of a special duty to exercise the degree of care that would normally be exercised under similar circumstances by the members of a limited group possessing unusual knowledge, skill, or experience. *Turpin v. Sortim*, 31 Cal. 3d 220, 229-230 (1982). In California, a professional person may be held liable to persons who suffer damage proximately caused by the professional in the negligent performance of these duties whether or not the person contracted with the professional for the services. *Kent v. Bartlett,* 49 Cal. 3d 724, 731 (1975). Under California law, professionals have a

9

tort duty to conform to professional standards used by other members of the profession. *Neel v. Magana, Oleny, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187-189, 98 Cal. Rptr. 837, 491 P.2d 421 (1971) (legal services); *Gagne v. Bertran*, 43 Cal. 2d 481, 489, 275 P.2d 15 (1954) (engineer); *Mission Oaks Ranch, Ltd. v. County of Santa Barbara*, 65 Cal. App. 4th 713, 723-725, 77 Cal. Rptr. 2d 1 (1998), *overruled on other grounds*, *Breggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1106, 1123, 81 Cal. Rptr. 471, 969 P.2d 564 (1999) (environmental consultant owed professional duty of care to county that hired the consultant).

### 4. LSI assumed liability for the performance of the appraisers' duties to WaMu under the terms of the Agreement.

In addition to the common law duties it owed to WaMu, LSI expressly assumed the liability for damages arising out of any negligent acts of the appraisers that it retained. Section 4.4 of the Agreement specifically provides that LSI "shall remain responsible and liable for [the appraisers'] compliance with the Agreement and performance hereunder." Agreement at 8. In other words, LSI stands in the shoes of the appraisers. This is true independent of whether or not LSI assumed individual liability in the Agreement.

### 5. The special relationship exception to the economic loss rule applies to the FDIC's claims.

The exception from the economic loss rule for breach of a duty imposed by a special relationship was stated in *J'Aire Corp. v. Gregory*, as follows:

> Even when only injury to prospective economic advantage is claimed, recovery is not foreclosed. Where a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity.

24 Cal. 3d 799, 804, 598 P.2d 60, 63, 157 Cal. Rptr. 407, 410 (1979).

With respect to the "special relationship" between an appraiser and client, the California Code of Regulations provides as follows:

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

> A real estate appraiser is vested with a fiduciary relationship of trust
> and confidence as to clients, lending institutions, and both public and
> private guarantors or insurers of funds in federally-related real estate
> transactions and that the qualifications of honesty, candor, integrity,
> and trustworthiness are directly and substantially related to and
> indispensable to the practice of the appraisal profession.

Cal. Code. Reg., tit. 10, § 3702; *see also*, 2 Miller & Starr, *California Real Estate*, § 4:64 (3d ed. 2000). When LSI undertook the duty to provide WaMu with a high volume of accurate and USPAP compliant appraisals, it entered into a special relationship. Indeed, LSI's breach of its duties relative to the 220 appraisals and desk reviews caused WaMu to incur losses in excess of $154 million. The individual appraisers had a special relationship to WaMu, and LSI assumed the liability emanating from that relationship by agreeing to be responsible and liable for the appraisers' compliance with the Agreement and the appraisers' performance of appraisal services pursuant to the Agreement.

### 6. The cases upon which LSI relies to support its assertion of the economic loss rule are not on point.

As previously noted, one of the cases relied upon by LSI regarding the economic loss rule is *Robinson*, 102 P.3d 268 (2009). The facts of that case demonstrate the inapplicability of the economic loss rule to the FDIC's claims in this case. *Robinson* involved the sale of defective clutches by the defendant. The jury found not only that the seller breached the contract and the warranties made pursuant to the contract, but also that the seller made false misrepresentations of fact. *Id.* at 272. The jury returned a verdict for compensatory damages and $6 million in punitive damages. Applying the economic loss rule, the intermediate court of appeal held that because the plaintiff suffered only economic losses, it could not recover in tort. The California Supreme Court reversed, holding that the economic loss rule did not apply to plaintiff's claim for affirmative misrepresentation. *Id.* at 276. The basis for the holding was that "…conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of

11

the contract and arising from principles of tort law." *Id.* at 273.

The other California cases relied upon by LSI regarding application of the economic loss rule are also inapplicable. In *Aas v. Superior Ct.*, the court stated that ". . . conduct amounting to a breach of contract becomes tortious when it also violates a duty independent of the contract arising from principles of tort law."[6] 24 Cal. 4th 627, 643, 12 P.3d 1125, 1136, 101 Cal. Rptr. 2d 718, 729 (2000). LSI also cites *Oracle USA Inc. v. Global Services* for the proposition that no tort cause of action arises where the duty is nothing more than a violation of a promise which undermines the expectations of the parties. 2009 WL 2084154, *5 (N.D. Cal. July 13, 2009). Though the court did not find an independent tort in that case, it did not reject the independent tort exception recognized in California law.

LSI relies upon *Iconix Brand Group Inc. v. Bongo Apparel, Inc.* for the proposition that New York law would bar the FDIC's claims. 2008 WL 2695090, *11 (S.D.N.Y. July 8, 2008); LSI Memo at 11. However, *Iconix* actually supports the FDIC's position. In *Iconix*, the court stated that a breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. The court also noted that, as stated in *North American*, a legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship, as in the case of professionals and fiduciaries. The economic loss rule was applied in that case because there was no common law duty to deliver products to retailers in a timely fashion.

---

[6] There are two non-published cases distinguishing *Aas* from LSI's use of the case. In *Brown Field Aviation Park LLC v. PB Aviation*, 2005 WL 1684689 (Cal. App. July 20, 2005), the court refused to dismiss a professional negligence action against an environmental consultant on the basis of the economic loss rule because professionals owe an independent duty in tort because they hold themselves out as possessing special skills. *Id.* at p. 8. Additionally, *Aas* was distinguished in *Mirzaib v. Matossian*, 2004 WL 2260611 (Cal. App. Oct. 8, 2004), where the court rejected a contention that the tort damages that plaintiff recovered essentially constituted a breach of the lease because the relationship between the parties was exclusively contractual and a breach of contract could not justify tort liability. *Id.* at *17. In rejecting this contention, the court relied on *Aas*' proposition that breach of contract becomes tortious when it also violates a duty independent of the contract arising from principles of tort law.

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

In *Motor City of Jacksonville v. South East Bank*, the court recognized an exception to the economic loss rule under Florida law when the other party's conduct establishes a tort distinguishable from or independent of the breach of contract. 83 F.3d 1317, 1343 (11th Cir. 1996) *vacated and remanded sub nom.*, *Hess v. FDIC*, 519 U.S. 1087, 117 S. Ct. 760, 136 L. Ed. 2d 708 (1997), *opinion reinstated, aff'd* 120 F.3d 1140 (11th Cir. 1997); *see also*, *Ladner v. AmSouth Bank*, 32 So. 3d 99, 105 (Fla. App. 2009) (citing *Indemnity Ins. Co. of N. Am. v. American Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004) ((The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach.). Indeed, the law applicable to the economic loss rule and its exceptions (to the extent the rule applies at all) is substantially identical in all the states in which the appraisals at issue in this lawsuit were performed.[7]

### 7. Alternative theories of recovery are permissible under the freedom of election rule.

As demonstrated by the authorities cited above, the FDIC may assert both gross

---

[7] *Pena v. Opic*, 2010 WL 1998152, *6 (Ariz. App. May 18, 2010); *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000); *Zeigler v. Sony Corp. of Am.*, 849 A.2d 19, 22 (Conn. Super. Ct. 2004); *City of Atlanta v. Benator*, 2011 WL 2623839, *7 (Ga. App. July 6, 2011); Hawaii Revised Statute 663-1.2; *Association of Apt. Owners of Newtown Meadows ex re. its Bd. of Dir. v. Venture 15, Inc.*, 167 P.3d 225, 279-81 (Haw. 2007); *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 1201 (Idaho 1995); *Neumann v. Carlson Envtl., Inc.*, 429 F. Supp. 2d 946, 952-53 (N.D. Ill. 2006); *Indianapolis-Marion Cty Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 736 (Ind. 2010); *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1070 (Md. App. 2002); *Farmer & Filer, Assoc. v. Guilford Transp. Ind.*, 2007 WL 2840376, *20 n.14 (Mass. Super. Sept. 7, 2007); *In re Trade Partners*, 2008 WL 3875396, *16 (W.D. Mich. Aug. 15, 2008); *Valley Farmers' Elevator v. Lindsay Bros. Co.*, 380 N.W.2d 874, 875 (Minn. App. 1986) *aff'd*, 398 N.W.2d 553 (Minn. 1987) *superseded on other grounds*, *Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn. 1990); *Public Serv. Enter. Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 198 (D.N.J. 1989); *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 206 P.3d 81, 83 (Nev. 2009); *Silicon Knights v. Epic Games*, 2011 WL 1134453, *5 (E.D.N.C. Jan. 25, 2011); *Ballreich Bros., Inc. v. Criblez*, 2010 WL 2735733, *4 (Ohio App. July 12, 2010); *Bell v. Public Employees Ret. Bd.*, 239 Or. App. 239, 247 P.3d 319 (2010); *Eaton Corp. v. Trace Carolina Plains*, 350 F. Supp. 2d 699, 702 (D.S.C. 2004); *Owen v. Option One Mortg. Corp.*, 2011 WL 3211081, *7 (Tex. App. July 28, 2011); *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010); and *Levinson v. Mass. Mutual Life Ins. Co*, 2006 WL 3337419, *13 (E.D. Va. Nov. 9, 2006).

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

1   negligence and breach of contract claims against LSI and is permitted, after trial, to select

2   the recovery that it prefers under California's freedom of election rule.  *See County of*

3   *Santa Clara v. Hayes Co.*, 43 Cal. 2d 615, 619, 620, 275 P.2d 456 (1954) (A plaintiff is

4   not required to choose between contract and tort recovery in response to a demurrer); *see*

5   *also, Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 663, 328 P.2d 198 (1958);

6   and *Crisci v. Security Ins. Co. of New Haven Conn.*, 426 P.2d 173 (1967).

7       **B.    The FDIC's Breach of Contract Claims Are Not Subject to the**
            **Arbitration Clause Contained in Exhibit B to the Agreement.**
8

9       Defendants base their motion to dismiss Count II on an arbitration clause contained

10  in Exhibit B to the Agreement that is limited to "[a]ny claim or controversy arising out of

11  or relating to this Exhibit B."  Agreement at 45.  This provision is not applicable because

12  the FDIC has not sued for breach of Exhibit B.  The FDIC's claims in Count II are for

13  breach of contractual provisions and representations contained in Sections 1(a)(15), 2.1

14  (a)-(d), and 15 of the Agreement and in Exhibit A, all of which contain separate duties

15  and representations that are distinct from the warranties contained in Exhibit B.  The

16  arbitration provision in Exhibit B simply does not apply to any of the FDIC's claims.

17              **1.    Standards governing the enforceability of arbitration provisions.**

18      To determine whether the FDIC must arbitrate its claims, this Court need determine

19  only:  "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

20  agreement encompasses the dispute at issue."  *Cox v. Ocean View Hotel, Corp.*, 533 F.3d

21  1114, 1119 (9th Cir. 2008) (citation and quotation marks omitted).  Courts apply state-law

22  principles to interpret a contract's meaning, but the scope of an arbitration clause is

23  governed by federal law.  *Tracer Research Corp. v. National Envtl. Services Co.*, 42 F.3d

24  1292, 1294 (9th Cir. 1994).

25      The proper scope of an arbitration clause "is a matter of contract and a party cannot

26  be required to submit to arbitration any dispute which he has not agreed to so submit."  *Id.*

27  (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

28  (1960)); *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, __ U.S. __, 130 S. Ct. 2847,

1 | 2857 (2010) ("Arbitration is strictly 'a matter of consent,' and thus 'is a way to resolve
2 | those disputes—*but only those disputes*—that the parties have agreed to submit to
3 | arbitration.'").   A court cannot seek greater efficiencies by expanding the scope of the
4 | parties' arbitration agreement. *Tracer*, 42 F.3d at 1294.

5 |        Initially, a court should determine whether an arbitration clause is narrowly or
6 | broadly drafted. *Cummings v. Fedex Ground Package Sys., Inc.*, 404 F.3d 1258, 1262
7 | (10th Cir. 2005) (citing and quoting *Louis Drefus Negoce S.A. v. Blystad Shipping &*
8 | *Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).   When a court determines that the parties
9 | intend an arbitration clause to be narrow in scope, the " 'strong federal policy favoring
10 | arbitration may not extend the reach of arbitration beyond the intended scope of the clause
11 | providing for it.' " *Irving v. Ebix, Inc.*, 2010 WL 3168429, *3 (S.D. Cal. Aug. 10, 2010)
12 | (quoting *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1179 n.43 (C.D. Cal.
13 | 2008) (citation omitted)); *see also, Cummings*, 404 F.3d at 1262 (finding a clear intent by
14 | the parties to narrowly limit arbitration to specific disputes).   The Ninth Circuit has held
15 | that where an agreement contains a narrow arbitration clause, disputes that fall outside the
16 | scope of the arbitration clause should not be compelled to arbitration.   *Mediterranean*
17 | *Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983); *see also*,
18 | *Teamsters Local 315 v. Union Oil Co. of Cal.*, 856 F.2d 1307, 1310-13 (9th Cir. 1988)
19 | (arbitration clause providing for arbitrability of "violations of ... obligations expressed in
20 | one or more of the written provisions of this Agreement" was held to be too narrow to
21 | include disputes between parties as to the meaning and application of the agreement's
22 | provisions); *Mesquite Lake Associates v. Lurgi Corp.*, 754 F. Supp. 161, 163 (N.D. Cal.
23 | 1991) (declining to compel arbitration pursuant to narrow arbitration clauses reasoning
24 | that "had the parties intended to subject all disputes about the adequacy of performance
25 | under the contract to arbitration, they could, and would, have clearly manifested that
26 | intent").

27 |        In *Brennan v. Global Safety Labs, Inc.*, the plaintiff filed suit in district court based
28 | on claims arising in part out of an acquisition agreement that did not contain an arbitration

15

clause.   2008 WL 2234830, *7 (N.D. Okla. May 29, 2008).   In refusing to compel arbitration of such claims, the court noted that "the Acquisition Agreement, which is the heart of the transaction, refers to litigation and litigation alone.   Quite simply, the arbitration tail should not wag the acquisition dog." *Id.* Further, the court should look not just to the language of the arbitration clause, but also to all terms that bear on arbitration and may otherwise limit the scope of the agreement to arbitrate. *Nanosolutions, LLC v. Prajza*, 2011 WL 2469708, *9 (D.D.C. June 2, 2011) (citing and quoting *Woodcrest Nursing Home v. Local 144, Hotel Hosp., Nursing Home and Allied Servs. Union*, 788 F.2d 894, 898 (2d Cir. 1986) (other citations omitted)).

An arbitration clause is broadly drafted when it references the *entire* contract or agreement, as opposed to a specific section, exhibit, or claim.   A motion to dismiss should be granted only "where the arbitration provision or agreement is broadly-worded and covers all the issues at hand." *Irving v. Ebix, Inc.*, 2010 WL 3168429, *3 (S.D. Cal. Aug. 10, 2010) (internal citations omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (clause requiring arbitration of any dispute "relating to" the agreement is "broad and far reaching"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720, 726 (9th Cir. 1999) (granting a motion to dismiss where the arbitration clause was broadly worded because it provided for arbitration of all disputes "arising in connection with" the parties' agreement).

Here, if the Court considers the Agreement as a whole, including the arbitration clause at issue, it must conclude that LSI's argument fails for two reasons.   First, the arbitration provision contained in Exhibit B is narrow and specifically applies only to claims based on Exhibit B.   Second, a review of the Agreement makes clear that the parties intended litigation, not arbitration, to govern claims brought under other provisions of the Agreement.

### 2.   By its terms, the arbitration clause is narrow in scope.

Section 10 of Exhibit B specifies that "[a]ny claim or controversy arising out of or relating to *this Exhibit B, Appraisal Warranty, or the breach thereof*, shall be settled via

binding arbitration…."[8]  *See* Agreement at 45 (emphasis added).  The parties' reasonable expectations were clearly to limit arbitration exclusively to claims brought under Exhibit B.  This  conclusion is supported by a comparison between Exhibit B's arbitration provision and the much broader provisions cited in *Chiron* and *Simula*, that provide for arbitration of claims arising under and relating to "the contract" or "the parties' agreement."

The FDIC's claims do not rely on or refer to Exhibit B in any way.  The breach of contract claim in Count II focuses on Defendants' failure to comply with entirely separate provisions of the Agreement – Services as defined and explained in sections 1(a)(15), 2.1(a)-(d), and Exhibit A (Services) and as warranted in section 15.2.  None of these sections refers in any way to Exhibit B, the Appraisal Warranty or any of the other terms defined in Exhibit B.  Furthermore, there is certainly nothing in Exhibit B to indicate that the remedies provided therein were intended to be exclusive.  Under New York law, the court should not construe a contract provision as an exclusive remedy absent specific indication in the contract.  *See National Westminster Bank v. George A. Fuller Co.*, 153 A.D.2d 529, 530, 544 N.Y.S.2d 607, 608 (N.Y. App. Div. 1989); *Durkee v. City of Plattsburgh*, 464 N.Y.S.2d 986, 987 (N.Y. Sup. Ct. 1983) (finding that plaintiff's actions did not bind him to a contract's grievance and arbitration procedure when the procedure was not expressly stated as the exclusive remedy in the contract).  While appraisals and desk reviews are Original Appraisals[9] as defined under Exhibit B for purposes of the Appraisal Warranty, appraisals and desk reviews are also Services under sections 1(a)(15) and 2.1 of the Agreement and under Exhibit A.  The FDIC is entitled to assert a claim for breach of such provisions.  The Defendants' argument that the FDIC can bring claims

---

[8] While courts generally interpret the phrase "relating to" as broad in scope, the explicit limitation of this phrase to Exhibit B leaves no room for anything other than a narrow interpretation.

[9] The term Original Appraisal is not found in the body of the Agreement other than in section 8.2(d), which is a carve out for Exhibit B claims from the limitations of liability that apply to the remainder of a party's claims under the Agreement.

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

1 | relating to Appraisals and Desk Reviews only under Exhibit B results in major portions of
2 | the Agreement being left without purpose, including the specific escalation procedure set
3 | out in section 5.6 and Exhibit G and the limitations on liability in sections 8.2(a) and (b).
4 | Agreement at 10, 12-13 and Exhibit G.  Because the FDIC's claims neither arise under
5 | nor relate in any way to Exhibit B, the Court should find that Exhibit B's narrow
6 | arbitration provision is inapplicable to the claims in Count II.

**3.    The Agreement demonstrates that it was the intention of the parties that claims for breach of provisions in the Agreement other than Exhibit B would not be subject to arbitration.**

An examination of the remainder of the Agreement reinforces the narrow scope of Exhibit B's arbitration provision.  Exhibit B provides a definitive framework for the submission of "claims" that is entirely different from the framework for resolution of issues under other provisions of the Agreement.  Exhibit B contains entirely separate provisions related to: (1) notice, (2) conditions precedent, (3) definitions of types of "claims," (4) cooperation requirements, (5) limitations of liability, and (6) arbitration.  *See* Agreement at Exhibit B.

In contrast to claims subject to the procedures in Exhibit B, the FDIC's breach of contract claim focuses on Defendants' failure to comply with entirely separate provisions of the Agreement.  The FDIC's claims invoke section 5 (Relationship Management), and section 5.6 specifically, which direct the parties to Exhibit G "to assist with the resolution of *any* issues concerning this Agreement."  Agreement at 10 (emphasis added).  This broad language stands in stark contrast to the narrow arbitration clause in Exhibit B and instead invokes Exhibit G for the resolution of issues.  Exhibit G does not have an arbitration clause; rather it provides an escalation procedure for disputes, but does not require the resolution of such disputes by arbitration.  *See* Agreement at 67.  Moreover, Exhibit G expressly allows the parties to pursue any rights and remedies not prohibited by the Agreement.  *Id.*  That obviously would include litigation.  If the parties intended Exhibit B's arbitration clause to be applied broadly to claims involving breach of other

18

1   provisions of the Agreement, they would have expressly provided so in the Agreement.

2        In addition to the above, the Agreement expressly contemplates litigation apart

3   from arbitration. Section 25 of the Agreement provides attorneys' fees to a prevailing

4   party "[i]n the event of any legal action between the Parties arising out of the subject

5   matter of this Agreement or arbitration between the parties as provided for in Section 10

6   of the Appraisal Warranty set forth in Exhibit B (<u>Appraisal Warranty</u>)." The use of the

7   word "or" clearly indicates that the parties intended to arbitrate breaches of Exhibit B and

8   to litigate breaches of the other provisions of the Agreement.

9        The remainder of the Agreement further illustrates the distinction between Exhibit

10   B claims and other claims under the Agreement and makes clear that Exhibit B's

11   arbitration clause was intended to be construed more narrowly than Defendants assert.

12   For example, section 8.2(a) provides a limitation on liability "for any direct damages

13   arising out of or relating to" a party's performance or failure to perform under the

14   Agreement. Section 8.2(b) provides further limitations with regard to consequential

15   damages related to the performance or lack of performance under the Agreement, and

16   section 8.2(c) then categorizes specific exclusions from the limitations of (a) and (b).

17        Section 8.2(d), which applies to claims under Exhibit B, creates totally separate

18   limitations of liability for Exhibit B claims. Defendants incorrectly assert that section

19   8.2(d) directs the parties to Exhibit B for the liability limits on the types of claims asserted

20   by the FDIC. From this premise, Defendants improperly conclude that the arbitration

21   provision in Exhibit B must apply to the FDIC's claims. The Defendants' conclusion is

22   simply wrong. According to the express terms of section 9.C. of Exhibit B, "[f]or

23   avoidance of ambiguity, limitations set forth in this Exhibit B apply to [WaMu]'s

24   recovery for direct damages attributable to breach of the appraisal warranty only...."

25   Agreement at 44.

26        The Agreement and section 10 of Exhibit B make clear that only claims relating to

27   Defendants' liability under Exhibit B are subject to arbitration. Exhibit B's language is

28   narrowly worded, particularly compared to standard, broadly worded arbitration clauses

that apply to entire contracts.  Consequently, Defendants' Motion to Dismiss Count II based on the arbitration clause in Exhibit B should be denied.

### C.   The Performance Guaranty Agreement Is an Unconditional Guaranty.

FNTS asserts that the FDIC's claim based on the Guaranty Agreement, a true and correct copy of which is attached as Exhibit B to the Complaint and incorporated herein for all purposes, must be dismissed because the FDIC did not "first pursue remedies against LSI before involving the benefits of this Performance Guaranty Agreement."  This argument ignores the language in paragraph 1 of the Guaranty Agreement which states that "Guarantor hereby *unconditionally and irrevocably guarantees* to [WaMu] due performance of all obligations undertaken by LSI in the Agreement."   Guaranty Agreement at 1 (emphasis added).  FNTS also ignores the language in paragraph 4 of the Guaranty Agreement which states that "the liability and obligation hereunder shall be *absolute and unconditional*."  *Id.* (emphasis added).  These two provisions make it clear that FNTS' obligations are in fact "unconditional."  In addition, the guaranty is referred to as one of performance, as are the guaranties in paragraphs 2 and 3 of the Guaranty Agreement.  The "first pursue remedies" language in the Guaranty Agreement simply cannot create a condition precedent, as asserted by FNTS.

New York law, which governs the Guaranty Agreement, provides that "it is a general rule that 'in the case of total repugnancy between two contract clauses, the first of such clauses shall be received, and the subsequent one rejected.' " *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 415-416 (S.D.N.Y. 2001) (citing *Honigsbaum's, Inc. v. Stuyvesant Plaza, Inc.*, 178 A.D.2d 702, 577 N.Y.S.2d 165, 166 (1991)); *see also*, *Liang v. Huang*, 255 A.D.2d 671, 679, 769 N.Y.S.2d 210, 212 (1998); *Pittsburg & S.R. Co. v. Central Trust Co. of New York*, 156 A.D. 182, 189, 141 N.Y.S. 66, 71 (1913) ("[I]t is a well-settled principle of construction that, if two clauses are repugnant and cannot stand together, the first will stand and the last will be rejected.").  In this case, if the "first pursue remedies" language in paragraph 3 is construed as a condition precedent, then it is in obvious conflict with the unconditional language in paragraph 1 (as well as in

20

1   paragraph 4), and therefore must be rejected.

2        New York law further provides that "[w]here a contract explicitly states that a
3   party's obligations are 'unconditional,' … courts have generally found that any condition
4   precedent is inherently in conflict with such a provision." *Morgan Stanley High Yield*
5   *Securities, Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 219 (S.D.N.Y. 2003)
6   ("[i]t is clear that any provision in a contract characterizing a party's obligations as
7   'unconditional' would be directly contradicted by any condition, whether established
8   orally or otherwise"). In sum, even if the "first pursue remedies" language in paragraph 3
9   of the Guaranty Agreement could be construed as a condition precedent it would directly
10  contradict, and thus be overridden by the unconditional language in paragraphs 1 and 4.

11       In any event, the FDIC does not concede that the "first pursue remedies" language
12  creates a condition precedent, at least not to the extent of requiring complete exhaustion of
13  all remedies against LSI before any claim can be asserted against FNTS. "To make a
14  provision in a contract a condition precedent, it must appear from the contract itself that
15  the parties intended the provision so to operate." *Torres v. D'Alesso*, 80 A.D.3d 46, 57-
16  58, 910 N.Y.S.2d 1, 10 (2010). "[T]he law does not favor a construction which creates a
17  condition precedent…." *Id.* (citing *Lui v. Park Ridge at Terryville Assn.*, 196 A.D.2d
18  579, 582, 601 N.Y.S.2d 496 (1993)). "New York courts are cautious when interpreting a
19  contractual clause as a condition precedent, and they will 'interpret doubtful language as
20  embodying a promise or constructive condition rather than an express condition….' "
21  *Israel v. Chabra*, 537 F.3d 86, 93 (2d Cir. 2008).

22       Lastly, the language in paragraph 3 does not on its face require the exhaustion of
23  remedies. Nor does it purport to convert the guaranty into one of collection only. On the
24  contrary, it is expressly a guaranty of performance. On its face, the language in paragraph
25  3 merely requires the FDIC to pursue remedies against LSI, which the FDIC has done.
26  The FDIC made demand for payment on LSI, and the demand was rejected. Therefore,
27  this alleged condition has been fulfilled, allowing the FDIC to pursue FNTS for its
28  guarantee obligations.

1            For all the reasons set forth above, the motion to dismiss Count III must be denied.

2     **D.**      **The FDIC Has Adequately Pled Its Alter Ego Claims.**

3            In Count IV[10] of the Complaint, the elements of the FDIC's claims under the Alter

4 Ego Doctrine and the Single Enterprise Doctrine are essentially the same. First, the FDIC

5 must allege and prove that there was such a unity of interest and ownership among the

6 LSI-related entities that the separateness of the entities ceased to exist with regard to the

7 appraisal services provided by LSI to WaMu. Second, the FDIC must allege and prove

8 that treating the appraisal services provided by LSI to WaMu as the acts of LSI alone

9 would cause an inequitable result. *Schwarzkopf v. Brimes*, 626 F.3d 1032, 1038 (9th Cir.

10 2010).

11            California state courts require a heightened level of pleading with respect to both

12 elements of the alter ego-related claims. *Meadows v. Emett & Chandler*, 99 Cal. App. 2d

13 466, 498-99 (1950); *Norins Realty Co. v. Consolidated Abstract & Title Guar. Co.*, 80

14 Cal. App. 2d 879, 883 (1947). However, state pleading requirements do not govern the

15 adequacy of pleadings in a federal case; the Federal Rules control. *Clement v. American*

16 *Greetings Corp.*, 636 F. Supp. 1326, 1334 (S.D. Cal. 1986) (denying motion to dismiss

17 claim for punitive damages that did not meet California's heightened pleading standard)

18 (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)).

19

20

21

22

23

24

_____

25 [10] Count IV of the Complaint also includes a claim against the related entities based on the
Joint Venture Doctrine. The elements of a claim under the Joint Venture Doctrine are
26 different from the elements of an alter ego/single enterprise claim, notwithstanding that
Defendants have lumped the claims together. *Connor v. Great Western Sav. & Loan*
27 *Assoc.*, 69 Cal. 2d 850, 863 (1968). Defendants have not challenged the adequacy of the
28 pleading of the joint venture claim with any specific arguments in their Motion to
Dismiss.

1    Defendants rely on the holding in *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d

2    1101 (C.D. Cal. 2003), to support their position.[11]   *Neilson*, however, offers no

3    explanation as to why any heightened pleading requirement should apply in federal court.

4    The court seems merely to assume that the heightened pleading requirement under

5    California law should apply.   In support of its holding, *Nielson* cites *In re Currency*

6    *Conversion Fee Antitrust Litigation*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003), and

7    *Wady v. Provident Life and Accident Ins. Co.*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal.

8    2002).   In *Wady*, the court held that the plaintiff could not assert alter ego to defeat a

9    motion for summary judgment when it had not pled alter ego at all in the complaint.  That

10   case does not support the holding in *Nielson*.  *Currency Conversion* is a New York case

11   that held that the mere pleading that the parent "exercised such dimension and control

12   over its subsidiaries . . . that it is liable according to the law" was inadequate under the

13   notice pleading standard of Federal Rule of Civil Procedure 8.

14   The FDIC has pled substantially more detailed facts than were pled in *Currency*

15   *Conversion*.  Specifically, in paragraphs 35-39 of the Complaint, in addition to setting out

16   the ownership structure of the entities, the FDIC has pled that the related entities

17   controlled and directed LSI's wrongful acts and omissions.  The Complaint alleges that

18   the LSI Agreement designated a senior officer of the parent entities to oversee and

19   manage the appraisal services that LSI provided to WaMu. The Complaint further alleges

20   that the actions of Kathleen Rice, the LSI employee directly responsible for appraisal

21   services, were directed by a senior officer of LSI's ultimate parent, FNIS.  When these

22   allegations are accepted as true and construed in the light most favorable to the FDIC, as

23   required by *Fayer*, 2011 WL 1663595 at *2, it would be inequitable to hold only LSI

24

---

25   [11] This Court's recent Order Granting Motion to Dismiss in the case of *FDIC v.*
     *Freestand Financial Holding Corp., et al.*, Case No. SACV 10-437 DOC (RNBx) (Dkt.
26   No. 48), follows the holding in *Neilson*, but without any discussion of the difference
     between California's heightened pleading requirements and the notice pleading
27   requirements of Federal Rule of Civil Procedure 8, even though that order expressly
     recognizes that the heightened pleading standard in Federal Rule Civil Procedure 9 does
28   not apply when the alter ego allegation is not based on fraud.

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

responsible for its gross negligence when it engaged in this wrongful conduct at the direction and control and for the ultimate benefit of its parent entities.

LSI sold its services to WaMu as though the LSI-related entities were an integral part of the appraisal services to be provided. LSI was represented to be a "division" of LPS. The proposal provided to WaMu contained detailed information regarding FNIS and the other related entities, as well as detailed biographies of the most senior officers of FNIS. In responding to inquiries from WaMu regarding largest customers, legal actions, and mergers and acquisitions, LSI listed information for FNIS and the other related entities – not just for LSI itself. LSI solicited and obtained WaMu's business by selling the benefits of dealing with the entire family of entities. It would be an inequitable "bait and switch" to now limit the FDIC's sources of recovery to the relatively shallow pockets of the lowest subsidiary. "[W]here a parent corporation uses its subsidiary 'as a marketing conduit' and attempts to shield itself from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied." *DOE v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).

Accordingly, Defendants' motion to dismiss Count IV should be denied.

**E.    Should the Court Grant Any Part of the Defendants' Motion to Dismiss, Plaintiff Requests Leave to Amend Its Complaint.**

Federal Rule of Civil Procedure 15(a) allows the Court to grant leave to amend when a complaint can be drafted so as to state a claim. Leave to amend should be denied only when the defects in the pleading cannot be cured or the plaintiff has acted in bad faith and/or caused undue delay. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also, Forman v. Davis*, 371 U.S. 178, 182 (1962). If the Court grants Defendants' motion to dismiss in any respect, the FDIC requests leave to amend to correct any cited deficiencies. The FDIC has neither acted in bad faith nor delayed the action.

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT

1

## V. CONCLUSION

2

Based on the foregoing, Defendants' Motion to Dismiss should be denied.

3

Dated: August 15, 2011                    BIENERT, MILLER & KATZMAN, PLC

4

5

By: *S/ Steven Jay Katzman*

6

Steven Jay Katzman
Attorneys for Plaintiff

7

FEDERAL DEPOSIT INSURANCE

8

CORPORATION, as Receiver of Washington
Mutual Bank

9

10

MULLIN HOARD & BROWN, L.L.P
Steven L. Hoard

11

John Mozola
Greg Dimmick

12

Sarah D. Pelley
Attorneys for Plaintiff

13

FEDERAL DEPOSIT INSURANCE

14

CORPORATION, as Receiver of Washington
Mutual Bank

15

Leonard J. DePasquale

16

Counsel, FDIC Legal Division
Attorney for Plaintiff

17

FEDERAL DEPOSIT INSURANCE

18

CORPORATION, as Receiver of Washington
Mutual Bank

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Coleen Grogan, declare,

That I am a citizen of the United States and am a resident or employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

That I am employed by a member of the United States District Court for the Central District of California and at whose direction I caused service of: OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT on the interested parties as follows:

**BY ELECTRONIC MAIL:** by electronically filing the foregoing with the Clerk of the District Court using its ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies said parties in this case:

Luke G. Anderson   luke.anderson@klgates.com

Bruce H. Nielson   bruce.nielson@klgates.com

David T. Case   david.case@klgates.com

**BY OTHER MEANS:** I am "readily familiar" with Bienert, Miller & Katzman, PLC's practice for collecting and processing mail with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. As such, I caused to be mailed the foregoing document(s) to the following non-ECF participants in this case:

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This certificate was executed on August 15, 2011, at San Clemente, California.

                                    _/s/Coleen Grogan/s/_____
                                    Coleen Grogan

OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT