UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

Case No. SA CV 11-706 DOC (ANx)                    Date: November 2, 2011

Title: FEDERAL DEPOSIT INSURANCE CORPORATION v. LSI APPRAISAL, LLC; FIDELITY
NATIONAL INFORMATION SERVICES, INC.; LENDER PROCESSING SERVICES, INC.;
LENDER PROCESSING SERVICES, LLC; LPS PROPERTY TAX SOLUTIONS, INC., f/k/a
FIDELITY NATIONAL TAX SERVICE, INC.; LSI TITLE COMPANY; and LSI TITLE AGENCY,
INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

Julie Barrera                             Not Present
Courtroom Clerk                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                            NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS

         Before the Court is a Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss")
(Docket 27) in the above-captioned case filed by LSI Appraisal, LLC ("LSI"); Fidelity National
Information Services, Inc. ("FNIS"); Lender Processing Services, Inc. ("LPS, Inc."); Lender Processing
Services, LLC ("LPS, LLC"); LPS Property Tax Solutions, Inc., f/k/a Fidelity National Tax Service,
Inc. ("FNTS"); LSI Title Company ("LSI Title Co."); and LSI Title Agency, Inc.'s ("LSI Title
Agency") (collectively, "Defendants"). The Court finds this matter appropriate for decision without oral
argument. Fed. R. Civ. P. 78; Local Rule 7-15. After considering the moving, opposing and replying
papers, and for the reasons discussed below, the Court hereby GRANTS in part and DENIES in part the
Motion to Dismiss.

## I.    BACKGROUND

         The Federal Deposit Insurance Corporation ("FDIC" or "Plaintiff"), as Receiver of
Washington Mutual Bank ("WaMu"), brings this action based on an Appraisal Outsourcing Services
Agreement ("LSI Agreement") entered into by WaMu and LSI on October 16, 2006. Complaint, ¶ 2;
Exhibit "A." Pursuant to the LSI Agreement, LSI was to provide appraisal services that it represented
and warranted would conform to federal and state law, regulatory guidelines, and all applicable industry

standards, including the Uniform Standards of Professional Appraisal Practice ("USPAP").[1] *Id.* LSI also agreed to insure the competency and qualifications of its appraisers and to conduct a meaningful quality control review of the appraisals. *Id.* Further, FNTS entered into a Performance Guaranty Agreement on October 16, 2006 ("Guaranty Agreement"). *Id.* at ¶ 4; Exhibit "B." Pursuant to the Guaranty Agreement, FNTS agreed, unconditionally and irrevocably, to guarantee "all obligations" undertaken by LSI under the LSI Agreement. *Id.* at ¶ 52.

Plaintiff alleges that, despite the representations and promises LSI made to WaMu, at least 220 of LSI's appraisal services failed to comply with federal and state law, regulatory guidelines, and the USPAP. *Id.* at ¶ 3. Specifically, Plaintiff avers that (1) LSI used appraisers who lacked the skill, experience, and qualifications necessary to perform the appraisals; (2) LSI's "quality control" of the appraisals was severely inadequate; and (3) to date, out of 220 appraisals that the FDIC and its experts have allegedly reviewed, more than 75 percent were found to have multiple egregious violations of the USPAP and applicable industry standards. *Id.* at ¶¶ 3, 30. As a result, Plaintiff claims that LSI delivered appraisals that were prepared in a grossly negligent manner and that contained substantially inflated appraisal values. *Id.* at ¶ 3. But for the inflated appraisals provided by LSI, Plaintiff alleges that WaMu would not have made the residential mortgage loans at issue and would not have suffered losses on those loans. *Id.*

As to FNIS; LPS, Inc.; LPS, LLC; FNTS; LSI Title Co.; and LSI Title Agency (collectively, "Other Defendants"), Plaintiff alleges that they controlled or directed LSI's actions and,

---

[1] The USPAP is formulated by the Appraisal Standards Board of the Appraisal Foundation, who "develops, publishes, interprets, and amends USPAP on behalf of appraisers and users of appraisal services." The USPAP includes the following standards, among others:

1.    Ethics

 - an appraiser must perform assignments ethically and competently, in accordance with USPAP and any supplemental standards agreed to by the appraiser in accepting the assignment.

2.    Standards Rule 1-1. The appraiser must not render appraisal services in a careless or negligent manner . . . .

5.    Standards Rule 3-1 (d)-(g). In developing an appraisal review, the reviewer must develop an opinion as to the completeness of the material under review, develop an opinion as to the apparent adequacy and relevance of the data [. . .], develop an opinion as to the appropriateness of the appraisal methods and techniques used [. . .]; and develop an opinion as to whether the analyses, opinions, and conclusions are appropriate and reasonable . . . .

as such, are directly liable for the damages resulting from the grossly negligent appraisal services LSI provided. *Id.* at ¶ 4. Plaintiff claims that, during the 18 month period in which LSI provided the appraisal services at issue: (1) LSI's ultimate parent company was FNIS; (2) FNIS owned LPS, Inc.; (3) LPS, Inc. owned LPS, LLC; (4) LPS, LLC owned FNTS; (5) FNTS owned LSI Title Co., which owned LSI Title Agency; and (6) LSI Title Agency owned LSI. *Id.* at ¶ 35. Accordingly, Plaintiff alleges that there was such a unity of interest and ownership among these entitles that the separateness of the entities ceased to exist with regard to the appraisal services provided by LSI to WaMu. Plaintiff further claims that treating the grossly negligence appraisal services provided by LSI to WaMu as acts of LSI alone would cause an inequitable result. *Id.* at ¶ 38.

On May 9, 2011, a copy of the Complaint was filed in this Court (Docket 1), alleging four causes of action: (1) gross negligence against all defendants; (2) breach of contract against LSI; (3) breach of contract against FNTS; and (4) alter ego, single business enterprise, joint venture against FNIS; LPS, Inc.; LPS, LLC; FNTS, LSI Title Co.; and LSI Title Agency. On July 22, 2011, Moving Defendants brought the instant Motion to Dismiss under Fed. R. Civ. P. 12(b) and, in the alternative with respect to the contract claim against Defendant LSI, to stay the proceeding until arbitration of such claim is had.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct.  *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)'." *Id.*

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.   DISCUSSION

### 1.   First Claim: Gross Negligence Against All Defendants

Plaintiff avers that Defendants breached their duties and were grossly negligent because Defendants failed to provide WaMu with appraisals that were prepared with such skill, prudence, and diligence as other appraisers commonly possess and exercise. Cmpl. at ¶ 43. Plaintiff claims that Defendants were also grossly negligent because they failed to provide appraisals that complied with USPAP and other applicable state and federal statutes and regulations, as well as standards applicable to the appraisal industry. *Id.*

Defendants argue that Plaintiff's gross negligence claim is barred by the economic loss rule. Motion to Dismiss, 8. Because the economic loss rule is essentially the same in all states, and both parties concede that California law governs its application here, the Court will proceed under California law. *See, e.g, Kasel v. Remington Arms Co.*, 101 Cal. Rptr. 314, 327 (Cal. Ct. App. 1972) (noting the forum state's interest in applying its own law "will be displaced only if there is a compelling reason for doing so"). The economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages. *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) ("A person may not ordinarily recover in tort for breaches of duties that merely restate contractual obligations"). The rule "prevents the law of contract and the law of tort from dissolving into one another." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). By preventing tort claims, the rule encourages parties to reach a mutually beneficial private bargain. *United Guar. Mort. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009). As such, the economic loss rule is particularly strong when a party alleges "commercial activities that negligently or inadvertently [went] awry." *Robinson Helicopter*, 34 Cal. 4th at 991.

California's economic loss rule has two broad categories of exceptions. *United Guaranty*, 660 F. Supp. 2d at 1180. The first category applies to products liability cases, which is inapplicable in the present case. *Id.* The second category applies to breaches of a noncontractual duty. *Id.* at ¶ 1181. California courts have found exceptions to the economic loss rule in the noncontractual duty category where the conduct alleged also: (1) breaches a duty imposed by some type of "special" or "confidential" relationship; (2) breaches a "duty" not to commit certain intentional torts; or (3) was committed "intending or knowing that such a breach will cause severe, unmitigable harm in the form of

MINUTES FORM 11 DOC                                    Initials of Deputy Clerk: jcb
CIVIL - GEN                                            Page 4 of 10

mental anguish, personal hardship, or substantial consequential damages." *Id*. These exceptions require the breach of a tort duty apart from the general duty not to act negligently. *Robinson Helicopter*, 34 Cal. 4th at 988. Indeed, "[i]f every negligent breach of a contract [gave] rise to tort damages, the [rule] would be meaningless, as would the statutory distinction between tort and contract remedies." *Id*. at 990 (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 553-554 (1999)). The California Supreme Court emphasizes that courts should focus on intentional conduct when considering whether to apply an exception to the economic loss rule. *Id*.

First, Plaintiff alleges that its gross negligence claim falls within a well-recognized exception to the economic loss rule, as LSI breached an independent tort duty. *See* Opposition to Defendants' Joint Motion to Dismiss Complaint ("Opposition"), 6. This "well-recognized exception" does not fit neatly into any of the *United Guaranty* categories. Rather, Plaintiff appears to be generally alleging that a noncontractual duty existed by virtue of the alleged independent tort duties LSI owed to WaMu. However, the economic loss rule prevents the law of contract and the law of tort from dissolving into one another. *Robinson Helicopter Co.,* 34 Cal. 4th at 988. Therefore, a person may not ordinarily recover in tort for breaches of duties that "merely restate contractual obligations." *Aas*, 24 Cal. 4th at 643.

The case of *Erlich* is instructive. There, plaintiff homeowners contracted with defendant general contractor to build their "dream house." 21 Cal. 4th at 548. After plaintiffs moved in, it rained and the house had severe leaks. *Id*. When the home was later inspected by another general contractor, plaintiffs discovered that the home was structurally unsound. *Id*. at 549. One of the plaintiffs suffered severe emotional distress and developed a permanent heart condition. *Id*. Plaintiffs sought recovery on several theories, including breach of contract and negligent construction. *Id*. The court held that defendant's negligence directly caused only economic injury and breached no duty independent of the contract and, therefore, plaintiffs were only entitled to contract damages. *Id*. at 554.

Here, Plaintiff avers that LSI is liable for negligence because it failed to meet California's independent common law duties for professionals and service providers. Opposition, 8. The standard of care owed by an appraiser to a client is embodied in USPAP, applicable federal and state standards and regulations, and applicable industry standards. Cmpl. at ¶ 26. However, like *Erlich*, where defendant's negligence caused only economic injury and breached no duty independent of the contract, LSI's alleged negligence caused only economic injury and LSI has failed to allege a sufficient duty independent of the contract. A person may not ordinarily recover in tort for breaches of duties that "merely restate contractual obligations."*Aas,* 24 Cal. 4th at 643. Pursuant to the LSI Agreement, LSI represented and warranted that every appraisal service it provided would conform to federal and state law, regulatory guidelines, and all applicable industry standards, including the USPAP. As such, the additional allegations pertaining to LSI's alleged common law duties "merely restate contractual obligations." *See* Cmpl. at ¶ 2. Therefore, as Plaintiff has not alleged an independent duty apart from the contract, Plaintiff has failed to show that the economic loss rule is not applicable in this situation. *Aas*, 24 Cal. 4th at 643.

Second, Plaintiff claims that the special relationship exception to the economic loss rule

MINUTES FORM 11 DOC
CIVIL - GEN

applies in the present case. Opposition, 10. However, courts have rejected the argument that professionals have a special relationship with contracting parties. For example, in *Erlich*, the court rejected the argument that a licensed general contractor, who had negligently constructed a house, had a special relationship with the plaintiff homeowners such that the contractor could be liable for negligent breach of contract. 21 Cal. 4th at 543. The court noted that defendant contractor was among thousands of contractors who provided the same services, and that plaintiffs had their choice among contractors willing to accept work in the area where their house was to be constructed. *Id*. at 553. Moreover, although plaintiffs "undoubtedly" relied on defendant's claimed expertise, plaintiffs were in a position to view and criticize defendant's work or to hire someone else. *Id*.

Here, Plaintiff avers that there was a special relationship between LSI and WaMu as an appraiser and client. Opposition, 10. Plaintiff claims that when LSI undertook the duty to provide WaMu with a high volume of accurate and USPAP compliant appraisals, it entered into a special relationship. *Id*. at 11. However, like *Erlich*, where the court rejected the argument that a licensed general contractor had a special relationship with plaintiff homeowners, Plaintiff has failed to adequately allege a special relationship. As in *Erlich*, where plaintiffs could choose among contractors, Plaintiff could choose from a variety of appraisers. Moreover, Plaintiff was free to criticize LSI's work or hire someone else. Therefore, Plaintiff has failed to allege a special relationship. Instead, a mere contractual relationship exists between LSI and WaMu.

As the duties alleged by Plaintiff "merely restate contractual obligations" and Plaintiff has failed to sufficiently allege a "special relationship," Plaintiff's claim for gross negligence is precluded by the economic loss rule. Accordingly, Defendants' Motion to Dismiss Plaintiff's Claim for Gross Negligence is GRANTED.

## 2.     Second Claim: Breach of Contract Against LSI

Plaintiff avers that LSI breached the LSI Agreement because LSI provided WaMu with appraisals that were not prepared by appropriately licensed or certified appraisers and that did not comply with the USPAP, applicable state and federal statutes and regulations, and other standards applicable to the appraisal industry. Cmpl. at ¶ 49. Plaintiff further claims that LSI failed to indemnify WaMu for losses incurred by WaMu relating to the inadequacy of LSI's services. *Id*. The essential elements of a breach of contract claim are: (1) the existence of a contract; (2) that plaintiffs performed or had an excuse for not performing under the contract; (3) that defendants breached the contract; and (4) that plaintiffs were damaged. *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

The parties do not dispute that a breach of contract claim has been adequately alleged. The only issue before the Court is whether the claim must be dismissed under Rule 12(b) because the LSI Agreement allegedly requires that the claim be submitted to arbitration. *See* Motion to Dismiss, 17; Opposition, 14. To determine whether Plaintiff must arbitrate the breach of contract claim, the Court must decide whether a valid agreement to arbitrate exists and, if so, whether the agreement

encompasses the dispute at issue. *Cox v. Ocean View Hotel, Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). The Ninth Circuit has held that where an agreement contains a narrow arbitration clause, disputes that fall outside the scope of the arbitration clause should not be compelled to arbitration. *See Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983).

For example, in *Mesquite Lake Associates v. Lurgi Corp.*, plaintiff customer brought suit against defendant contractor for breach of contract and torts. 754 F. Supp. 161 (N.D. Cal. 1991). The contractor sought to compel arbitration based on an arbitration clause contained in the parties' agreement. *Id*. at 162. Three other clauses in the contract delineated the areas of dispute which were specifically subject to resolution by arbitration. *Id*. The court declined to compel arbitration pursuant to the narrow arbitration clauses because the arbitration clause did not cover the dispute at issue. *Id*. at 163. In doing so, the court reasoned that "had the parties intended to subject all disputes about the adequacy of performance under the contract to arbitration, they could, and would, have clearly manifested intent." *Id*.

Plaintiff challenges the arbitration agreement only on the ground that the arbitration agreement does not encompass the dispute at issue. Opposition, 14. Section 10 of the LSI Agreement (the "Appraisal Warranty") covers dispute resolution. It states, in part: "Any controversy or claim arising out of or relating to this Exhibit B Appraisal Warranty, or the breach thereof, shall be settled via binding arbitration . . . ." Cmpl. at Exhibit "B." Plaintiff claims that the provision is not applicable because the FDIC has not sued for breach of Exhibit B. Opposition, 14. Plaintiff avers that the claims are for the breach of contractual provisions contained in the LSI Agreement and in Exhibit A, all of which contain separate duties that are distinct from the warranties contained in Exhibit B. *Id*. LSI counters that the FDIC's claims are related to Exhibit B because Section 8.2(d) of the LSI Agreement directs the parties to Exhibit B for the parties' agreed-upon limitation of LSI's liability for claims of the type asserted in the Complaint. Motion to Dismiss, 18.

The Court does not agree with LSI's interpretation. Looking at the language of the arbitration provision contained in Exhibit B, it is narrow and specifically applies only to claims based on Exhibit B. Indeed, Exhibit B clearly states that "[a]ny controversy or claim rising out of or relating to this Exhibit B [ . . .] shall be settled via binding arbitration." Like *Mesquite Lake Associates*, where the narrow arbitration clause delineated the areas of dispute specifically subject to resolution by arbitration, the arbitration clause here was specifically limited to disputes related to Exhibit B. If the parties intended for the arbitration agreement to cover the entire LSI Agreement, as sophisticated parties, they would have clearly stated so. They did not. Therefore, the arbitration agreement does not encompass the dispute at issue and the breach of contract claim does not need to be submitted to arbitration. Accordingly, Defendants' Motion to Dismiss Plaintiff's Claim for Breach of Contract against LSI is DENIED.

### 3.      Third Claim: Breach of Contract Against FNTS

Plaintiff next claims that FNTS breached the Guaranty Agreement it entered into with WaMu by failing to compensate WaMu or the FDIC for the damages caused by LSI's breach of the LSI

Agreement. Cmpl. at ¶ 54. The parties also do not dispute that a breach of contract claim has been adequately alleged here. The only issue before the Court is whether the claim must be dismissed under Rule 12(b) because Plaintiff has not fulfilled an alleged condition precedent before filing suit against FNTS. Motion to Dismiss, 2; Opposition, 20. Section 3 of the Guaranty Agreement states that "[WaMu] shall be required to first pursue remedies against LSI before involving the benefits of this Performance Guaranty Agreement." Cmpl. at Exhibit B, at LS12-0429889.

Plaintiff avers that the language does not on its face require the exhaustion of remedies. Opposition, 21. Rather, Plaintiff claims that the language merely requires the FDIC to pursue remedies against LSI, which the FDIC has allegedly done by demanding payment from LSI. *Id*. FNTS counters that the FDIC is not complying with the "first pursue remedies against LSI" requirement because it is simultaneously pursuing remedies against both LSI under the Agreement and FNTS under the Guaranty Agreement. Motion to Dismiss, 20. Plaintiff's interpretation of the "first pursue remedies" condition is plausible on its face.  As plausibility is all that is required, Plaintiff is not precluded from bringing a breach of contract claim against FNTS for failing to "first pursue remedies" against LSI. *Iqbal*, 129 S.Ct. at 1950. Whether Plaintiff's interpretation is correct is for a later stage of litigation. Accordingly, Defendants' Motion to Dismiss Plaintiff's Claim for Breach of Contract against FNTS is DENIED.

### 4.  Fourth Claim: Alter Ego, Single Business Enterprise, and Joint Venture Against FNIS; LPS, Inc.; LPS, LLC; FNTS; LSI Title Co.; and LSI Title, LLC

Plaintiff alleges that the Other Defendants should be held jointly and severally liable for the wrongful acts of LSI under the Alter Ego Doctrine, the Single Enterprise Doctrine, and the Joint Venture Doctrine. Cmpl. at ¶¶ 58, 60.

Plaintiff concedes that the elements of its claims under the Alter Ego Doctrine and the Single Enterprise Doctrine are essentially the same, so both will be addressed in an analysis of the Alter Ego Doctrine. *See* Opposition, 22. In determining whether alter ego liability applies, a federal court applies the law of the forum state. *Schwarzkopf v. Brimes*, 626 F.3d 1032, 1037 (9th Cir. 2010) (applying California alter ego law in a federal bankruptcy case). California law recognizes alter ego liability when there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased to exist. *Id*. at 1038. Further, the adherence to the fiction of the separate existence of the corporation must result in the sanctioning of fraud or promotion of injustice. *Id*. Factors suggesting an alter ego relationship include the commingling of funds and other assets, the failure to segregate funds of separate entities, the disregard of legal formalities, or the manipulation of assets between entities so as to concentrate the assets in one and the liabilities in another. *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 838-40 (1962).

For example, in *Leek v. Cooper*, plaintiff employees attempted to plead alter ego liability with respect to defendant shareholder of a corporation. 194 Cal. App. 4th 399, 414 (2011). Plaintiffs alleged that defendant shareholder was employed by defendant corporation, was the sole owner of the corporation, and that all acts alleged were authorized or ratified by defendant shareholder. *Id*. at 415.

The court found that plaintiffs' allegations failed to sufficiently allege alter ego liability because the facts alleged did not show a unity of interest and inequitable result from treatment of the corporation as a sole actor. *Id.*

      Here, too, Plaintiff fails to adequately allege alter ego liability. Plaintiff avers in conclusory language that the Other Defendants directed and controlled LSI's actions with regard to the appraisal services provided by LSI to WaMu. Cmpl. at ¶ 57. Plaintiff further claims in conclusory language that there was such a unity of interest and ownership among these entities that the separateness of the entities ceased to exist with regard to the appraisal services provided by LSI to WaMu and that treating the grossly negligence appraisals provided by LSI to WaMu as LSI's acts alone would cause an inequitable result. *Id.* The facts alleged in support of this claim include the following: (1) the LSI Agreement itself designated a senior officer of LPS, Inc. to oversee and manage the appraisal services to be provided by LSI to WaMu and (2) LSI's executive vice president of operations testified that she reported to FNIS and LPS, Inc. leadership and that an employee of FNIS had the authority to direct her actions as an LSI employee. *Id.* at ¶ 39. As it stands now, these allegations are insufficient, as Plaintiff does not allege facts showing a unity of interest or that an inequitable result would result from treatment of the corporation as a sole actor. Like *Leek*, where plaintiff did not allege facts showing an inequitable result, Plaintiff completely fails to allege facts showing how treating the allegedly negligent appraisals provided by LSI to WaMu as LSI's acts alone would cause an inequitable result. Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950.

      As to Plaintiff's claim of "joint venture," Plaintiff has failed to sufficiently allege that a joint venture existed between LSI and the Other Defendants. The term "joint venture" usually connotes a commercial objective. *County of Riverside v. Loma Linda University*, 118 Cal. App. 3d 300, 312 (1981) (citing *Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501, 506-507 (1957)). It exists where there is "an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control." *Id.* Whether the parties to a contract have created a joint venture or some other relationship involving cooperative effort depends upon their actual intention, which must be determined in accordance with ordinary rules governing interpretation of contracts. *Id.* at 313.

      Plaintiff avers that the direction and control asserted by the Other Defendants over LSI constitutes a joint undertaking to accomplish a common commercial purpose and, as such, the Other Defendants should be held jointly and severally liable under the Joint Venture Doctrine. Cmpl. at ¶ 60. Plaintiff does not provide adequate facts to support this allegation. Plaintiff merely claims that many of LSI's business practices and its relations with LSI establish that all of the Defendants were acting as a single business entity. Cmpl. at ¶15. Therefore, this claim must also fail, as mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. Accordingly, Defendants' Motion to Dismiss Plaintiff's Claim for Alter Ego, Single Business Enterprise, and Joint Venture against FNIS; LPS, Inc.; LPS, LLC; FNTS; LSI Title Co.; and LSI Title, LLC is GRANTED.

## IV.    DISPOSITION

In light of the foregoing, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

The Court GRANTS the Motion to Dismiss as to Plaintiff's gross negligence and alter ego, single business enterprise, and joint venture claims. These claims are DISMISSED WITH LEAVE TO AMEND.

The Court DENIES dismissal as to Plaintiff's breach of contract claims against LSI and FNTS.

Plaintiff shall file any amended complaint by November 23, 2011.

The Clerk shall serve this minute order on all parties to the action.