Luke G. Anderson (California Bar No. 210699)
luke.anderson@klgates.com
K&L Gates LLP
1900 Main Street
Suite 600
Irvine, CA 92614-7319
Tel: (949) 253-0900; Fax**:** (949) 253-0902

David T. Case (admitted *pro hac vice*)
david.case@klgates.com
Bruce H. Nielson (admitted *pro hac vice*)
bruce.nielson@klgates.com
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C.  20006
Tel:  (202) 778-9084; Fax: (202) 778-9100

ATTORNEYS FOR DEFENDANTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Washington Mutual Bank,<br><br>Plaintiff,<br><br>v.<br><br>LSI APPRAISAL, LLC, et al,<br><br>Defendants. | Case No.: SACV11-706 DOC (ANx)<br>*Related with* Case No.: SACV11-704 DOC<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION (1) TO DISMISS COUNT 1 OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND (2) FOR PARTIAL SUMMARY JUDGMENT REGARDING THE LIMITATION ON CONTRACT DAMAGES**<br><br>DATE:  FEBRUARY 6, 2012<br>TIME: 8:30 A.M.<br>COURTROOM: 9D<br>JUDGE:  HON. DAVID O. CARTER |

# TABLE OF CONTENTS

Introduction .................................................................................................1

Argument ....................................................................................................1

A.    Count 1 Should Be Dismissed ...............................................................1

    1.    The Merger Clause Bars Claims Based on
       "Pre-Agreement Contracts" ......................................................2

    2.    The Statute of Limitations Bars Claims on Two
       Pre-Agreement Loans ..............................................................6

B.    Partial Summary Judgment Should Be Granted Limiting Damages ...............7

    1.    The Language of Section 8.2(d) Limits Liability .................................8

    2.    Defendants Have Carried Their Burden Under Rule 56 ....................12

    3.    New York Law Does Not Limit the Agreement's
       Damages Provision ...............................................................13

    4.    More Discovery Is Not Needed to Apply the Agreement's
       Clear Terms .........................................................................16

Conclusion ................................................................................................18

REPLY TO OPPOSITION

1

# TABLE OF AUTHORITIES

2

## Cases

3

ABN AMRO Verzekeringen BV v. Geologistics Am., Inc., 253 F. Supp. 2d 757,

4
765 (S.D.N.Y. 2003), *aff'd*, 485 F.3d 85 (2d Cir. 2007), *cert. denied*, 552 U.S. 1295, 128 S. Ct. 1739, 170 L. Ed. 2d 539 (2008) ................................ 16

5

Bruckmann, Rosser, Sherrill & Co. v. Marsh USA, Inc., 87 A.D.3d 65, 70-71,

6
926 N.Y.S.2d 471, 475 (Sup. Ct. App. Div. 2011) ........................................ 9

7

Calvin Klein Ltd v. Trylon Trucking Corp., 892 F.2d 191, 194-95
(2d Cir. 1989) .................................................................................................. 15

8

Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd., 81 N.Y.2d 821, 595

9
N.Y.S.2d 381, 611 N.E.2d 282, 284 (1993) .................................................... 15

10

CreditSights, Inc. v. Ciasullo, No. 05 CV 9345(DAB), 2007 WL 943352
(S.D.N.Y. Mar. 29, 2007)................................................................................ 4, 5

11

David Gutter Furs v. Jewelers Prot. Servs., Ltd., 79 N.Y.2d 1027, 584 N.Y.S.2d

12
430, 594 N.E.2d 924, 924-25 (1992) ............................................................. 15

13

DynCorp v. GTE Corp., 215 F. Supp. 2d 308 (S.D.N.Y. 2002) ...................... 13, 15

14

EOS GMBH Electro Optical Sys. v. DTM Corp., No. SA CV 00-1230 DOC
(MLGx), 2002 WL 34536679, *6 (C.D. Cal. Feb. 6, 2002) ........................ 17

15

Globe Food Servs. Corp. v. Consol. Edison Co. of N.Y., Inc., 184 A.D.2d 278,

16
279-280, 584 N.Y.S.2d 820, 821 (N.Y. App. Div. 1992) ............................. 5

17

Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 732, n.5
(2d Cir. 1984) .................................................................................................. 8

18

In re Am. Express Fin. Advisors Sec. Litig., ___ F.3d ___, 2011 WL 5222784

19
(2d Cir. Nov. 3, 2011) .................................................................................... 6

20

Jamison v. Roth, No. B206927, 2009 WL 1039820, **6-7 (Cal. Ct. App.
April 20, 2009) ............................................................................................... 7

21

LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp., 424 F.3d 195, 207

22
(2d Cir. 2005) ................................................................................................. 12

23

Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458
(2d Cir. 2010) ................................................................................................. 9

24

Meinrath v. Singer Co., 482 F. Supp. 457, 460-61 (S.D.N.Y. 1979) ................ 12

25

Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc., 84 N.Y.2d 430, 436,

26
618 N.Y.S.2d 882, 643 N.E.2d 504 (1994).................................................... 13

27

Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y., 273 F. Supp. 2d 436
(S.D.N.Y. 2003)............................................................................................... 14, 16

28

Primex Int'l Corp. v. Wal-Mart Stores, Inc., 89 N.Y.2d 594, 679 N.E.2d 624,
657 N.Y.S.2d 385 (1997) ................................................................................ 4

Private One of N.Y., LLC v. JMRL Sales & Serv., Inc., 471 F. Supp. 2d 216, 223 (E.D.N.Y. 2007) ...................................................................6

Roberts v. Edith Roman Holdings, Inc., No. 10 Civ. 4457 (LAP), 2011 WL 2078223 (S.D.N.Y. May 19, 2011) ...............................................5

Schneider v. Cal. Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)..............7

Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365, 1370-71 (1992) (citations omitted) (quoting Kalisch-Jarcho, Inc., 461 N.Y.S.2d 746, 448 N.E.2d at 416). .................................14, 16

Stevens v. Allied Builders, Inc., 74 A.D.3d 1757, 1759, 905 N.Y.S.2d 388, 390 (Sup. Ct. App. Div. 2010)...................................................................9

Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006) .......................................................................17

Torres v. D'Alesso, 910 N.Y.S.2d 1, 7 (N.Y. App. Div. 2010) .........................5

Tradex Europe SPRL v. Conair Corp., No. Civ. 1760(KMW)(FM), 2008 WL 1990464, *3 (S.D.N.Y. May 7, 2008) ............................................15

iv                    REPLY TO OPPOSITION

**INTRODUCTION**

Defendants' motion to dismiss Count 1 of Plaintiff's First Amended Complaint ("Amended Complaint") is based on two grounds:  (1) the clear and unambiguous merger clause of the Appraisal Outsourcing Services Agreement (the "Agreement") between LSI Appraisal, LLC ("LSI") and Washington Mutual Bank ("WaMu"); and (2) the two-year California statute of limitations for oral contracts.  Plaintiff Federal Deposit Insurance Corporation ("FDIC") argues that neither the language of the Agreement nor the statute of limitations for oral contracts applies to the FDIC's claims in Count 1.  These arguments must be rejected because the Agreement's merger clause voids all prior agreements, and the statements in Plaintiff's Opposition ("Opposition") regarding a written contract do not prevent the application of the oral contract statute of limitations to the first two loans in Count 1.

Defendants' motion for partial summary judgment is based on the Agreement's clear limitation of liability provisions.  Plaintiff responds that (a) the Agreement's limitation of liability does not apply to its claims (Opp. at 3-4,10-14); (b) Defendants "have not satisfied their initial burden under Rule 56 . . . to identify the evidence that demonstrates the absence of a genuine issue of material fact" (Id. at 4, 14-16); and (c) New York law does not permit a party to "limit its liability by contract for damages caused by grossly negligent conduct" (Id. at 4, 16-17).  These arguments must be rejected because they are contrary to the unambiguous language of the Agreement and the New York law that applies to commercial contracts such as the Agreement.

In sum, the language of the Agreement, the facts in the record, and the applicable law do not support the FDIC's arguments.  Accordingly, Defendants' motion to dismiss and for partial summary judgment should be granted.

**ARGUMENT**

A.    Count 1 Should Be Dismissed

Defendants' motion to dismiss Count 1 should be granted because (1) the Agreement's merger clause voids pre-Agreement contracts and (2) California's two-

year statute of limitations for oral contracts bars claims based on the first two loans under Count 1.

1.    The Merger Clause Bars Claims Based on "Pre-Agreement Contracts"

The FDIC alleges in Count 1 that LSI and WaMu entered into a "separate contract with regard to the 12 appraisal services that LSI provided to WaMu prior to entering into the LSI Agreement," and that LSI breached these "pre-Agreement contracts." Amended Compl. ¶¶ 18, 30-34. Defendants moved to dismiss this claim because the language of Section 26 of the Agreement states that the Agreement and the Exhibits "represent the entire understanding and agreement between [LSI] and [WaMu] with respect to the matters identified" in the Agreement, and that "[a]ny representations or agreements that may have been made by any Party prior to the execution of this Agreement with respect to such matters are void." Agmt. § 26 (Amended Compl. Exh. A at LSI2-0429916).

The FDIC argues that the Agreement's merger clause does not apply because "[t]he 'matters identified' in the LSI Agreement are the services to be provided by LSI to WaMu during the term of the LSI Agreement." Opp. at 5. Remarkably, the FDIC also claims that the "LSI Agreement has *absolutely nothing to do* with the appraisal services provided by LSI" before the Agreement. Id. (emphasis added). These arguments are refuted by the FDIC's own allegations, by common sense, and by numerous New York cases involving analogous facts.

Despite Plaintiff's assertion to the contrary, the Agreement and the alleged "pre-Agreement contracts" addressed the exact same subject matter: the provision of "appraisal services" to WaMu. This is evidenced by the allegations of the Amended Complaint (all italicized emphases added):

- "In July 2006 [i.e., before the Agreement was executed], WaMu hired LSI *to provide appraisal services . . . .*" Amended Complaint ¶ 2.

REPLY TO OPPOSITION

- "*Both before and after the LSI Agreement was executed*, LSI represented and warranted that each and *every appraisal service it provided* would conform to federal and state law . . . ." Id.

- "Despite these representations . . ., *at least 219 [now 218] of the appraisal services provided by LSI* failed to comply . . . .[1] *Twelve of the appraisal services were performed prior to the LSI Agreement* . . . ." Id. ¶ 3.

- "LSI and WaMu entered into a separate contract with regard to each of *the 12 appraisal services that LSI provided to WaMu prior to entering into the LSI Agreement* . . . ." Id. ¶ 18.

- "*Prior to entering into the LSI Agreement*, LSI offered to sell, and did in fact sell, *appraisal services* to WaMu . . . . LSI represented and warranted . . . that its *appraisal services* would conform to USPAP . . . . Indeed, *the representations and warranties made by LSI were essentially the same as the representations and warranties that were subsequently memorialized in the LSI Agreement*." Id.

- "LSI provided *appraisal services* to WaMu from July 2006 [i.e., before the Agreement was executed] through November 2007." Id. ¶ 23.

These allegations prove beyond any doubt that, for purposes of the merger clause in Section 26, the "matters identified" in both the Agreement and the alleged "pre-Agreement contracts" were the same: appraisal services. In addition, the Declaration of Kathleen M. Rice ("Rice Declaration"), the content of which was not challenged by Plaintiff, demonstrates that LSI provided the same Desk Review, Field Review and other appraisal services to WaMu both before and after the Agreement was executed. Rice Decl. ¶ 3 and Att. 1.

Logic also compels the conclusion that the "matters identified" in the Agreement and in the alleged "pre-Agreement contracts" were the same. There is no

---

[1]     The FDIC is removing the one loan from Exhibit C to the Amended Complaint that was identified as not involving appraisal services provided by LSI. Opp. at 2, n. 1.

allegation that LSI and WaMu had any relationship before the alleged "pre-Agreement contracts" were entered into in mid-2006, and the relationship that allegedly began at that time continued through, and was formalized by, the execution of the Agreement in October 2006.  Like nearly all commercial contracting parties who engage in negotiations, and where samples of services to be provided are often supplied before entering into a formal, written contract, the parties here made clear that the Agreement was their entire agreement with respect to all representations, agreements or services provided or to be provided by LSI, and that all prior agreements regarding the matters now formalized in the written Agreement were "void."  Agmt. § 26.

   The cases cited in the Opposition are easily distinguishable.  For example, Primex Int'l Corp. v. Wal-Mart Stores, Inc., 89 N.Y.2d 594, 679 N.E.2d 624, 657 N.Y.S.2d 385 (1997) reached the conclusion it did precisely because the later agreement in that case *did not* address the arbitration clause that was in prior agreements.  As a result, and because "[g]enerally, a broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof," the court "conclude[d] that the language of the [later agreement's] merger clause was insufficient to establish any intent of the parties to revoke retroactively their contractual obligations to submit disputes . . . to arbitration."  Id., 89 N.Y.2d at 598-99, 679 N.E.2d at 626-27, 657 N.Y.S.2d at 387-88.  In sharp contrast to Primex, the parties here clearly expressed in Section 26 their intention that "any" prior agreements regarding the matters identified in the Agreement were rendered "void" upon execution of the Agreement.  Agmt. § 26.

   Also easily distinguishable is CreditSights, Inc. v. Ciasullo, No. 05 CV 9345(DAB), 2007 WL 943352 (S.D.N.Y. Mar. 29, 2007), which involved a merger clause in a later agreement that was held to "have *no terms* which correlate to the [prior agreement's] provisions regarding" the key issue in the case.  Id. at * 8 (emphasis added).   The court in that case also held that the "agreements have obviously dissimilar purposes" and "do not relate to precisely the same subject

1   matter."  Id.   In contrast to the agreements in <u>CreditSights</u>, the Agreement and the

2   alleged "pre-Agreement contracts" here both had the same purposes and the same

3   subject matter:  the provision of appraisal services.[2]

4       A recent, and much more analogous, New York case is <u>Roberts v. Edith Roman</u>

5   <u>Holdings, Inc.</u>, No. 10 Civ. 4457 (LAP), 2011 WL 2078223 (S.D.N.Y. May 19, 2011).

6   That case involved "a dispute concerning the applicability of the performance bonus

7   provisions in two employment contracts entered into by [the two plaintiffs and

8   defendants, their employers]."  <u>Id.</u> at *1.   Each plaintiff first entered into an

9   employment agreement with defendants in 2004, but each plaintiff subsequently

10  entered into a new employment agreement in 2007.  <u>Id.</u>   Both the 2004 and 2007

11  agreements contained performance bonus provisions, "but the language of those

12  provisions differed, resulting in a different calculation of the [p]laintiffs' bonuses

13  under each Agreement for 2007, the year in question."  <u>Id.</u>   The defendants moved for

14  partial summary judgment, arguing, based on a merger clause in the 2007 agreements,

15  "that the 2007 [a]greements govern [p]laintiffs' performance bonuses for the year 2007

16  and that the 2004 [a]greements' performance bonus provision is inapplicable."  <u>Id.</u>

17      The court in <u>Roberts</u> granted the motion for summary judgment, holding:

18          . . . Under New York law, "a written agreement that is complete,

19      clear and unambiguous on its face must be enforced according to the plain

20      meaning of its terms." Moreover, New York law gives full effect to

21      merger clauses.  <u>E.g.</u>, <u>Torres v. D'Alesso</u>, 910 N.Y.S.2d 1, 7 (N.Y. App.

22      Div. 2010) ("Merger clauses are not mere boilerplate."). When the parties

23      to a contract enter into a new agreement that expressly supersedes the

24      previous agreement, the previous agreement is extinguished. . . .

25  ───────────────
    [2]      The other case the FDIC cited on this issue, <u>Globe Food Servs. Corp. v. Consol.</u>
26  <u>Edison Co. of N.Y., Inc.</u>, 184 A.D.2d 278, 279-280, 584 N.Y.S.2d 820, 821 (N.Y.
    App. Div. 1992), involved a later contract (a) with a merger clause whose terms did
27  not state that the agreement superseded prior agreements and (b) that "did not deal
    with precisely the same subject matter as the earlier contract."  In contrast, the parties
28  here agreed that all prior agreements were "void," and the Agreement and alleged
    "pre-Agreement" contracts addressed the same subject matter.

\*          \*          \*

> *. . . Plaintiffs, in essence, claim that the 2007 Agreements "simply provide a new contractual agreement for the years after the effective date of the new agreements."*

\*          \*          \*

> . . . The effect of the 2007 Agreements was to terminate the 2004 Agreements . . . and replace the term of employment under the 2004 Agreements with a new one.  That is what a merger clause does.  As of . . . the effective date of the 2007 Agreements, Plaintiffs' employment was pursuant to the 2007 Agreements, and not the 2004 Agreements. *Plaintiffs' argument that the 2007 Agreements simply provided for post-2007 employment terms and conditions is meritless.  When the 2007 Agreements were executed, they governed the terms of employment for Plaintiffs as of the effective date, and thereafter, the 2004 Agreements had no further effect.*

Id. at \* 3 (most citations omitted; italicized emphasis added).  See also, e.g., In re Am. Express Fin. Advisors Sec. Litig., ___ F.3d ___, 2011 WL 5222784 (2d Cir. Nov. 3, 2011) (affirming decision in securities class action that class members could not assert claims against a class defendant, based on a prior agreement with the defendant, after a class action settlement agreement was reached that contained a merger clause superseding prior agreements); Private One of N.Y., LLC v. JMRL Sales & Serv., Inc., 471 F. Supp. 2d 216, 223 (E.D.N.Y. 2007) (holding that "plaintiff cannot bring this action" pursuant to a prior agreement with defendant where subsequent agreements contained merger clause and the prior agreement "addressed the same subject matter as the subsequent agreements").

> 2.      The Statute of Limitations Bars Claims on Two Pre-Agreement Loans

Defendants moved to dismiss claims based on the first two loans described in Count 1 (and identified in Exhibit C to the Amended Complaint) because the Amended

REPLY TO OPPOSITION

Complaint does not clearly allege that such claims were "founded on an instrument in writing," and California has a two-year statute of limitation for oral contract claims.[3] Plaintiff responded by asserting in the Opposition several "facts" that are not alleged in the Amended Complaint.  For example, Plaintiff asserted, but did not expressly allege in the Amended Complaint that:  (a) LSI submitted a *written* bid proposal to WaMu (Plaintiff claims this is alleged in Amended Complaint ¶ 17, Opp. at 8, but it is not); and (b) WaMu submitted a *written* request for appraisal services to LSI (again, Plaintiff claims this is alleged in Amended Complaint ¶ 24, Opp. at 8, but it is not).

The Court must ignore these new allegations in the Opposition because "new allegations contained in [an] opposition motion . . . are irrelevant for Rule 12(b)(6) purposes."  Schneider v. Cal. Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). The Court should therefore treat the alleged "pre-Agreement" contracts as contracts "founded upon an oral rather than a written agreement."  Jamison v. Roth, No. B206927, 2009 WL 1039820, **6-7 (Cal. Ct. App. April 20, 2009) (unpublished) (where plaintiff "failed to produce any evidence" that defendants accepted the terms of an alleged letter agreement, the alleged agreement was oral and plaintiff's "cause of action for breach of contract was subject to the two-year statute of limitations"). Because the alleged contracts for the first two loans listed by Plaintiff were performed more than two years before WaMu's receivership, the FDIC's claims based on those two loans must be dismissed.  See Defendants' Mem. at 9-12.

B.    Partial Summary Judgment Should Be Granted Limiting Damages

Defendants' motion for partial summary judgment is based on the clear limitation of liability language in Section 8.2(d) of the Agreement.  To avoid this provision, Plaintiff argues that (1) Section 8.2(d) of the Agreement does not apply to Plaintiff's claims, (2) Defendants have not satisfied their burden under Rule 56, and (3)

---

[3]    Plaintiff "does not agree with the conflicts of law analysis by which Defendants conclude that the contracts at issue are governed by the California statute of limitations," Opp. at 8, but Plaintiff provides neither any basis for its disagreement nor any argument for the application of any other state's statute of limitations.

REPLY TO OPPOSITION

Defendants cannot limit their liability for gross negligence.  These arguments must be rejected as ignoring the language of the Agreement and being contrary to the law.

> 1.    The Language of Section 8.2(d) Limits Liability

Section 8.2(d) of the Agreement clearly states:

> The limitations or exculpations of liability set forth in Section 8.2(a) (Direct Damages) will not apply to claims by [WaMu] arising from direct damages regarding Original Appraisals as defined in <u>Exhibit B</u> (Appraisal Warranty).  *[LSI]'s liability to [WaMu] for claims arising from or related to losses suffered by [WaMu] due to direct damages regarding an Original Appraisal shall not exceed the amounts set forth in <u>Exhibit B</u> (Appraisal Warranty) with respect to any individual Original Appraisal.*

Agmt. § 8.2(d) (Amended Compl. Exh. A at LSI2-0429904) (italicized emphasis added; other emphasis original).  To escape the conclusion that Plaintiff's claims for direct damages cannot exceed the amounts in Exhibit B, Plaintiff argues that because the term "Original Appraisal" is defined in Exhibit B to the Agreement, the term "has no meaning and no operative effect except in the context of Exhibit B."  Opp. at 11.  This argument must be rejected:

- First, Exhibit B and its terms are as much a part of the Agreement as are all other parts and terms of the Agreement because the Agreement states that "[t]his Agreement *and the Exhibits hereto* represent the *entire understanding and agreement* between [LSI] and [WaMu] . . . ."  Agmt. § 26 (emphasis added).

- Second, contracts often include in an exhibit defined terms that apply to the entire contract.  <u>See</u>, <u>e.g.</u>, <u>Grumman Allied Indus., Inc. v. Rohr Indus., Inc.</u>, 748 F.2d 729, 732, n.5 (2d Cir. 1984) (term "Know-how" is defined in Exhibit A to asset purchase agreement).

- Third, Plaintiff's interpretation would render the language of Section 8.2(d) that limits liability for claims based on Original Appraisals

1   meaningless.  This is not permissible under New York law.  <u>See</u>, <u>e.g.</u>,

2   <u>Bruckmann, Rosser, Sherrill & Co. v. Marsh USA, Inc.</u>, 87 A.D.3d 65,

3   70-71, 926 N.Y.S.2d 471, 475 (Sup. Ct. App. Div. 2011) ("Courts are

4   obliged to interpret a contract so as to give meaning to all of its terms.")

5   (citation omitted); <u>Stevens v. Allied Builders, Inc.</u>, 74 A.D.3d 1757, 1759,

6   905 N.Y.S.2d 388, 390 (Sup. Ct. App. Div. 2010) ("courts 'should

7   construe [a contract] so as to give full meaning and effect to the material

8   provisions,' and they should not construe a contract in such a way that

9   would render a provision meaningless") (citations omitted).

10   "Original Appraisal," as defined in Exhibit B to the Agreement and as used in Section

11   8.2(d) of the Agreement, means and includes what the definition says it means and

12   includes:  "Interior Appraisal[s], Exterior Appraisal[s], Field Review[s], [and] Desk

13   Review[s]."  Agmt. Exh. B § 1 (Amended Compl. Exh. A at LSI2-0429928).  In short,

14   the definition of "Original Appraisal" includes all of the types of appraisal services that

15   were provided under the Agreement.[4]

16          Plaintiff also argues that the limitation of liability language in Section 8.2(d) of

17   the Agreement does not apply to limit LSI's liability because "[t]he FDIC's claims are

18   not for breach of Exhibit B."  Opp. at 14.  This argument is a strawman.  Defendants

19   have repeatedly stated that the FDIC did not, and cannot, bring a claim under Exhibit B

20   "because the time for bringing any claims under Exhibit B has long since passed."

21   Defendants' Mem. p. 18.  Most significantly, the damages limitation in Section 8.2(d)

22   of the Agreement for claims arising from Original Appraisals, such as the FDIC's

23   claims, is clearly *not* limited to claims brought *under* Exhibit B.  <u>Id.</u>  Rather, Section

24   8.2(d) applies to limit LSI's liability for "claims arising from or related to losses

25   ────────────────

26   [4]       The holding in <u>Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.</u>, 595
      F.3d 458 (2d Cir. 2010), which was cited by Plaintiff for the unremarkable proposition
27   that a definition that was the key issue in that case meant what it said and did not
      include what it did not include, contains a good list of New York rules of contract
28   interpretation, all of which, when followed here, compel the conclusion that the clear
      and unambiguous language of Section 8.2(d) of the Agreement limits LSI's liability for
      the FDIC's claims to the amounts set forth in Exhibit B.  <u>Id.</u> at 466-468.

1  suffered by [WaMu] due to direct damages regarding an Original Appraisal."  Agmt.

2  § 8.2(d).  That language describes a much broader universe of claims than just claims

3  brought under Exhibit B, and it is a universe that clearly includes the claims brought

4  by the FDIC.[5]

5        The FDIC also claims that the Section 8.2(d) limitation of liability does not

6  apply here because the FDIC's claims "do not fall into any of the three defined

7  categories of claims" under Exhibit B.  This is, in essence, an argument that a claim

8  must fall under one of those categories for Section 8.2(d) to apply.  However, there is

9  absolutely *no contractual language* stating that, for the limitation of liability in Section

10  8.2(d) to apply, Plaintiff's claims must fall within one of the "defined category of

11  claims" under Exhibit B.  Rather, the language of Section 8.2(d) is broad and covers

12  "claims arising from or related to losses suffered by [WaMu] due to direct damages

13  regarding an Original Appraisal."  Accordingly, the language contemplates "different-

14  from-Exhibit-B claims" and limits LSI's liability for such claims to "the amounts set

15  forth in <u>Exhibit B</u> (Appraisal Warranty) with respect to any individual Original

16  Appraisal."  Agmt. § 8.2(d) (original emphasis) (Amended Compl. Exh. A at LSI2-

17  0429904).  In other words, Section 8.2(d) uses the amounts set forth in Exhibit B as the

18  damages limit for the "different-from-Exhibit-B claims" brought by the FDIC here.

19        Exhibit B sets forth different damages limitation amounts for different "types"

20  of Exhibit B claims:  "Foreclosure/Deed in Lieu Claims," "Secondary Market

21  Rejection Claims," "Secondary Market Recourse Claims," and claims based on "Desk

---

22   
23  [5]    When they wanted to, the parties clearly knew how to refer to claims "brought
under Exhibit B" or "brought under the Appraisal Warranty [defined in Section
24  1.(a)(1) of the Agreement as '[t]he appraisal warranty . . . set forth in Exhibit B']."  For
example, Section 9.B. of Exhibit B to the Agreement states:  "[WAMU] AGREES
25  THAT IN NO EVENT SHALL [LSI'S] LIABILITY FOR [WAMU'S] DAMAGES
ARISING *AS A RESULT OF BREACH OF THE APPRAISAL WARRANTY* EXCEED .
26  . . ."  Agmt. Exh. B § 9.B. (Amended Compl. Exh. A at LSI2-0429935) (capitalized in
original; italicized emphasis added).  The fact that the parties used language here, and
27  in other parts of the Agreement, that clearly refers to claims brought under the
Appraisal Warranty/Exhibit B, but did *not* use such language to limit the application
Section 8.2(d) to claims brought under the Appraisal Warranty/Exhibit B,
28  demonstrates the parties' intention that Section 8.2(d) apply more broadly than just to
claims brought under the Appraisal Warranty/Exhibit B.

          REPLY TO OPPOSITION

Reviews and Field Reviews."  However, logic dictates that the Exhibit B amounts used as the damages limits under Section 8.2(d) are those that most closely match the claims made by the FDIC here.  For this case, the most significant limitation is plain:  by far the most numerous service provided by LSI with respect to the 206 "post-Agreement" loans listed in Exhibit C to the Amended were services that involved the provision of only a Desk Review or Field Review (164 of the 206 "post-Agreement" loans involved only a Desk Review or Field Review).  Defendants' Mem. at 17-18; Rice Decl. ¶ 3(a)(1).  Given the nature of the review services provided with respect to those loans, the $10,000 per loan limit for Desk Review and Field Review loans that is set forth in Exhibit B, Section 8.5 clearly applies as the damages limit on claims for damages concerning Desk Reviews or Field Reviews.  See Defendants' Mem. at 15-16.

That leaves only the 42 loans that involved the provision by LSI of something more than only a Desk Review or Field Review.  The damages limit that applies to them could, theoretically, be the limit that would apply to loans with either "Foreclosure/Deed in Lieu Claims" or "Secondary Market Rejection Claims" or "Secondary Market Recourse Claims."[6]  Agmt. Exh. B § 8 (Amended Compl. Exh. A at LSI2-0429933).  However, because the Amended Complaint alleges that "[e]ach of the 219 [now 218] loans made by WaMu in reliance on LSI's appraisal services was held by WaMu for investment and *not sold into the secondary market*," Amended Compl. ¶ 4 (emphasis added), the two "Secondary Market" options clearly would not provide the applicable damages limit for the 42 loans.  That leaves, as the applicable damages limit amount, the "lesser of amounts" formula for "Foreclosure/Deed in Lieu

---

[6]     "Foreclosure/Deed in Lieu Claims" are defined as when "[WaMu] has suffered Actual Financial Loss . . . arising from . . . foreclosure or acceptance of a deed in lieu of foreclosure and subsequent sale of the property."  Agmt. Exh. B § 3.  "Actual Financial Loss" is defined as a resale of a foreclosure/deed in lieu property for less than the outstanding principal balance of the loan on the property as of the date of the foreclosure or deed in lieu of foreclosure.  Id. Exh. B § 4.A.(ii).  "Secondary Market Rejection Claims" are defined as claims arising from "rejection of the Loan by the *secondary market* and subsequent discounted sale of the Loan."  Id. Exh. B § 3.D (emphasis added).  "Secondary Market Recourse Claims" are defined as claims arising from "liability for post-closure recourse by a *secondary market* investor with respect to a Loan."  Id. (emphasis added).

11                REPLY TO OPPOSITION

Claims" that is set forth in Exhibit B, Section 8.2 and is more fully described in Defendants' Memorandum, pp. 18-20.

2.   Defendants Have Carried Their Burden Under Rule 56

Despite Plaintiff's arguments to the contrary, Defendants have informed the Court of the basis for their summary judgment motion, which is simply the clear and unambiguous language of Section 8.2(d) and Exhibit B, Section 8 of the Agreement. See Defendants' Mem. at 13-18.  Plaintiff is disputing the interpretation and legal effect of that clear language, but there can be no factual dispute that the language speaks for itself, says what it says, and means what it says.[7]  See, e.g., LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp., 424 F.3d 195, 207 (2d Cir. 2005) (disagreeing with "district court's construction [of contractual language], which renders [a] . . . warranty superfluous," and stating that the contract "means what it says"); Meinrath v. Singer Co., 482 F. Supp. 457, 460-61 (S.D.N.Y. 1979) (granting summary judgment to defendant on contract claims where plaintiff sought "enforcement of the contract . . . upon terms . . . markedly different from those in the writing").

Plaintiff's argument that Defendants have not identified "any evidence showing that the FDIC is seeking recovery of damages for breach of Exhibit B" is misguided. See Opp. p. 15.  Defendants agree that Plaintiff is not seeking, and cannot seek, recovery of damages for breach of Exhibit B.  Rather, Plaintiff seeks recovery of

---

[7]   Plaintiff's disputation of the legal effect of the language of the Agreement is evidenced even in the Statement of Genuine Disputes ("SGD") filed with the Opposition.  The SGD consists almost entirely of legal arguments, not genuine factual disputes, and the SGD misunderstands several of the facts identified in Defendants' Statement of Uncontroverted Facts.  For example, with respect to Defendants' uncontroverted fact #4, which describes the type of services actually provided under the Agreement, Plaintiff identified four bases for "dispute," the first of which claimed the fact was an "incomplete description of the Agreement" and the other three of which are legal arguments.  SGD at 2.  That fact was presented simply as a description of the type of services that were, in fact, provided under the Agreement, and was not presented or intended as a "complete description" of the Agreement.   Similarly, Defendant objected to uncontroverted fact #7 as a "legal interpretation of a provision" of the Agreement, SGD at 3, but fact #7 merely quoted – and did not interpret – the language of Section 8.2(d) of the Agreement.

REPLY TO OPPOSITION

1  damages related to losses allegedly suffered due to direct damages regarding Original
2  Appraisals, and its claims for those damages are limited as provided in Section 8.2(d)
3  of the Agreement.

4         3.    New York Law Does Not Limit the Agreement's Damages Provision

5         Plaintiff also argues that under New York law, "a party may not insulate itself
6  by contract from damages caused by grossly negligent conduct."  Opp. at 16.  While
7  that statement may be generally true in the abstract, in reality New York courts
8  regularly enforce contractual damages limitations in breach of contract cases involving
9  commercial contracts and conclusory allegations of gross negligence or intentional
10 wrongdoing.  For example, in DynCorp v. GTE Corp., 215 F. Supp. 2d 308 (S.D.N.Y.
11 2002), plaintiff, which was the buyer of a company, sued the guarantor of the seller,
12 alleging breach of contract and fraud.  The court granted defendant's motion to dismiss
13 to the extent plaintiff sought damages in excess of the damages limitation in the
14 parties' agreement.  Id. at 317-18.  In rejecting plaintiff's argument that, like the
15 FDIC's argument here, the contractual limitation of liability should not be given effect
16 in light of the allegations, the court held:

17             Under New York law, sophisticated parties with equal bargaining
18       power can agree to limit the liability that the other may recover from a
19       breach of contract.  Metropolitan Life Ins. Co. v. Noble Lowndes Int'l,
20       Inc., 84 N.Y.2d 430, 436, 618 N.Y.S.2d 882, 643 N.E.2d 504 (1994). . . .

21             [Plaintiff] argues that the limitation of liability provisions should
22       not be enforced if the breach was fraudulent, willful or grossly negligent .
23       . . .  However, the decision of the New York Court of Appeals in
24       Metropolitan Life is authoritative, and it holds that an allegation that a
25       breach of contract was willful rather than involuntary does not allow a
26       court to disregard an unambiguous limitation of liability provision agreed
27       to by parties of equal bargaining power.  Metropolitan Life, 84 N.Y.2d at
28       435, 618 N.Y.S.2d 882, 643 N.E.2d 504.  [Plaintiff] and [defendant], both

                                    13            REPLY TO OPPOSITION

1   sophisticated parties represented by sophisticated counsel, unambiguously

2   provided the limit of recovery in the event of breach, and I may not re-

3   write how the parties . . . limited their liabilities and rights of recovery.

4       I therefore dismiss [plaintiff's] allegations seeking recovery in

5   contract against [defendant] in excess of [the contractual damages

6   limitation amount].  I also dismiss paragraph 52 of the complaint, alleging

7   that [defendant] may not rely on the limitation of liability sections . . .

8   because "of the fraudulent or grossly negligent breaches of contract."

9   Id. (most citations omitted).

10      A similar case, <u>Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.</u>, 273 F.

11  Supp. 2d 436 (S.D.N.Y. 2003), involved a claim by a telecommunications reseller

12  against a telecommunications carrier for breach of contract and fraud.  The court

13  granted summary judgment for the defendant on the issue of contractual limitation of

14  liability and rejected the plaintiff's argument that the limitation of liability provision

15  was void on public policy grounds because of the defendant's alleged actions

16  constituting "malice and intentional wrongdoing that render the liability provision

17  void."  <u>Id.</u> at 451.  The court held:

18      "Gross negligence, when invoked to pierce an agreed-upon limitation of

19      liability in a commercial contract, must 'smack of intentional

20      wrongdoing'.... It is conduct that evinces a reckless indifference to the

21      rights of others." <u>Sommer v. Fed. Signal Corp.</u>, 79 N.Y.2d 540, 583

22      N.Y.S.2d 957, 593 N.E.2d 1365, 1370-71 (1992) (citations omitted)

23      (quoting <u>Kalisch-Jarcho, Inc.</u>, 461 N.Y.S.2d 746, 448 N.E.2d at 416).

24      "'Malice,' in law, is a state of mind intent on perpetrating a wrongful act

25      to the injury of another without justification."

26          While issues of malice, willfulness, and gross negligence often

27      present questions of fact, courts have sustained limitation of liability

28      provisions in the context of a summary judgment motion when the

14      REPLY TO OPPOSITION

surrounding facts compel such a result.  See, e.g., DynCorp, 215 F.Supp.2d at 318; . . . Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd., 81 N.Y.2d 821, 595 N.Y.S.2d 381, 611 N.E.2d 282, 284 (1993) ("[The evidence,] while perhaps suggestive of negligence or even 'gross negligence' as used elsewhere, does not evince the recklessness necessary to abrogate [the plaintiff's] agreement to absolve [the defendant] from negligence claims."); David Gutter Furs v. Jewelers Prot. Servs., Ltd., 79 N.Y.2d 1027, 584 N.Y.S.2d 430, 594 N.E.2d 924, 924-25 (1992) ("Taken together, these allegations do not raise an issue of fact whether defendant performed its duties with reckless indifference to plaintiff's rights. . . .").

\*          \*          \*

. . . [S]everal other decisions on point illustrate *the far higher mark at which New York courts place the bar and, also, the effects of wrongful conduct sufficient as a matter of law to nullify a limitations of liability clause in contract – demanding nothing short of [] a compelling demonstration of egregious intentional misbehavior evincing extreme culpability:  malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts. . . .*

Id. at 450-55 (some citations omitted; italicized emphasis added).  See also, e.g., Calvin Klein Ltd v. Trylon Trucking Corp., 892 F.2d 191, 194-95 (2d Cir. 1989) (reversing district court's rejection of contractual limitation of liability in case involving defendant's "conceded gross negligence," noting that the parties "were business entities" and holding that "[w]here such entities deal with each other in a commercial setting, and no special relationship exists between the parties, clear limitations between them will be enforced"); Tradex Europe SPRL v. Conair Corp., No. Civ. 1760(KMW)(FM), 2008 WL 1990464, \*3 (S.D.N.Y. May 7, 2008) (granting summary judgment to defendant based on contractual limitation of liability, despite allegations of intentional misconduct) (internal quotation marks and citations omitted);

1  ABN AMRO Verzekeringen BV v. Geologistics Am., Inc., 253 F. Supp. 2d 757, 765

2  (S.D.N.Y. 2003), *aff'd*, 485 F.3d 85 (2d Cir. 2007), *cert. denied*, 552 U.S. 1295, 128 S.

3  Ct. 1739, 170 L. Ed. 2d 539 (2008) (granting partial summary judgment for defendants

4  on contractual limitation of liability) (internal quotation marks and citation omitted).

5        As was the case with the plaintiffs in many of the cases cited above, the FDIC

6  here has alleged "gross negligence" and "in some instances, intentional wrongdoing,"

7  Amended Compl. ¶ 25, but, as in many of the cases cited above, the allegations are

8  conclusory and are not sufficiently supported by specific allegations that smack of

9  "egregious intentional misbehavior evincing extreme culpability:  malice, recklessness,

10  deliberate or callous indifference to the rights of others, or an extensive pattern of

11  wanton acts."  Net2Globe, 273 F. Supp. 2d at 454.  The FDIC's conclusory allegations

12  simply do not come close to meeting the "high bar" imposed by New York courts

13  before they will disregard, in a breach of contract action, an agreed-upon limitation of

14  liability provision in a contract between two large commercial entities.[8]

15        4.    More Discovery Is Not Needed to Apply the Agreement's Clear Terms

16        Finally, Plaintiff's "conditional motion" under Rule 56(d) regarding discovery,

17  Opp. at 17, should be denied for the simple reason that the issues presented by

18  Defendants' motion can and should be resolved by the Court on the basis of the clear

19  and unambiguous language of the Agreement and the facts already in the record,

20  including the Rice Declaration.  Plaintiff has not satisfied, and cannot satisfy, the

21  requirement for a continuance under Rule 56(d):  "A party requesting a continuance

22

23  [8]       In addition, New York's pubic policy of generally not enforcing liability
   limitations in cases involving gross negligence protects against the exoneration of a
24  party in such cases or the limitation of a party's liability to a "nominal sum."  See
   Sommer, 79 N.Y.2d at 554 (policy "applies equally to contract clauses purporting to
25  exonerate a party from liability and clauses limiting damages to a nominal sum.").
   Here, the limitation of liability in Section 8.2(d) would neither exonerate LSI nor limit
26  its liability to a "nominal sum."  For example, the damages amount set by Section
   8.2(d) and Exhibit B, Section 8.5 of for each of the FDIC's claim involving only Desk
27  Review or Field Review services – $10,000 – certainly cannot be considered a
   "nominal sum," especially in light of the fact that LSI's average "gross revenue" per
28  service provided was approximately only $329, a substantial part of which LSI paid on
   to the appraiser actually doing the appraisal or appraisal review work.

1  pursuant to Rule 56[(d)] must identify by affidavit the specific facts that further

2  discovery would reveal, and explain why those facts would preclude summary

3  judgment." <u>Tatum v. City and County of San Francisco</u>, 441 F.3d 1090, 1100 (9th Cir.

4  2006).   The FDIC conducted an extensive investigation into its possible claims before

5  filing this lawsuit, an investigation that included (a) the production by LSI to the FDIC

6  of documents and emails relating to the loans listed by the FDIC in the Amended

7  Complaint and (b) the FDIC's three-day administrative deposition of LSI's Executive

8  Vice President of Appraisal Operations, Kathleen M. Rice, to which the FDIC referred

9  in its original Complaint in this action (Orig. Compl. ¶ 39).

10         As with the declaration submitted in the <u>Tatum</u> case, the declaration submitted

11  by the FDIC here fails to "identify the specific facts that further discovery would have

12  revealed or explain why those facts would have precluded summary judgment" and

13  fails to explain how any such facts are "essential to justify [plaintiff's] opposition," as

14  required under Rule 56(d).  <u>Id.</u>  <u>See also</u>, <u>e.g.</u>, <u>EOS GMBH Electro Optical Sys. v.</u>

15  <u>DTM Corp.</u>, No. SA CV 00-1230 DOC (MLGx), 2002 WL 34536679, *6 (C.D. Cal.

16  Feb. 6, 2002) (denying continuance under what is now Rule 56(d) in patent

17  infringement case involving a License Agreement entered into by the parties that

18  contained a "Non-Assert" clause where "the License Agreement is unambiguous").

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# CONCLUSION

For the reasons described in Defendants' Memorandum and in this Reply, the Court should grant the Defendants' (a) Motion to Dismiss Count 1 of the Amended Complaint and (b) Motion for Partial Summary Judgment regarding the limitation on any contract damages that may be recoverable by Plaintiff.

Dated:  January 27, 2012                    K&L GATES LLP


                                       By:  /s/ Luke G. Anderson (SBN 210699)
                                            Luke G. Anderson (SBN 210699)
                                            1900 Main Street
                                            Suite 600
                                            Irvine, CA 92614-7319

                                            David T. Case (admitted *pro hac vice*)
                                            Bruce H. Nielson (admitted *pro hac vice*)
                                            1601 K Street, N.W.
                                            Washington, D.C.  20006

                                            Attorneys for all Defendants

18                                    REPLY TO OPPOSITION