# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION,**<br><br>    **Plaintiff,**<br><br>  vs.<br><br>**LSI APPRAISAL LLC ET AL.,**<br><br>    **Defendants.** | **Case No.: SACV 11-00706 DOC(ANx)**<br><br><br>**ORDER DENYING WITHOUT PREJUDICE MOTION FOR COSTS [412]** |
| **FEDERAL DEPOSIT INSURANCE CORPORATION,**<br><br>    **Plaintiff,**<br><br>  vs.<br><br>**CORELOGIC VALUATION SERVICES LLC ET AL.,**<br><br>    **Defendants.** | **Case No.: SACV 11-00704 DOC(ANx)**<br><br><br>**ORDER DENYING WITHOUT PREJUDICE MOTION FOR COSTS [452]** |

Before the Court are two motions for reimbursement of costs filed by nonparty JPMorgan Chase ("Chase") against the Federal Deposit Insurance Corporation ("FDIC") as Receiver for Washington Mutual Bank ("WaMu"). The motions are filed in two separate actions before this Court: *FDIC v. LSI Appraisal Services*, 8:11-cv-706, and *FDIC v. CoreLogic*, 8:11-cv-704. Because the motions are both brought against the FDIC regarding the same facts, the Court resolves these motions together. After reviewing the moving and opposing papers and the record, the Court DENIES the motions WITHOUT PREJUDICE.

**I.     Background**

On September 25, 2008, the Office of Thrift Services placed WaMu into receivership under the FDIC. The same day, J.P. Morgan Chase bought the assets and most liabilities of WaMu for about $1.9 billion pursuant to a Purchase and Assumption Agreement ("P&A Agreement"). *See* P&A Agreement, Dimmick Decl. Ex. 1. The FDIC then brought suit against two defendants in this Court: LSI Appraisal Services (case number 8:13-cv-706) and CoreLogic (case number 8:13-cv-704). The FDIC alleged that appraisal services provided by LSI and CoreLogic did not comport with the Defendants' contracts with WaMu. Those cases both ended in settlement.

In the course of litigation, however, Defendants LSI and CoreLogic sought discovery of documents underlying the loans at issue, WaMu's lending process, and a range of other topics. Chase, having purchased the bulk of the WaMu assets, held many of these records. A lengthy and contentious discovery process ensued, and the FDIC issued subpoenas and motions to compel against Chase. *See FDIC v. LSI* (Dkt 89); *FDIC v. CoreLogic* (Dkt. 94). Additional disputes over privilege questions arose and required claw back procedures. *See* Dimmick Decl. ¶¶ 22-26. Chase filed these motions under Federal Rule of Civil Procedure 45 to recover the costs it incurred in complying with the FDIC's subpoenas. Chase seeks $627,522.90.

**II.    Legal Standard**

Rule 45(d)(1)[1] states that a party or attorney issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense" on the person or entity subject to the subpoena. Fed. R. Civ. P. 45(d)(1). In turn, "the court for the district where compliance is required must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id*. A third party may object to a subpoena within fourteen days. Fed. R. Civ. P. 45(d)(2)(B). If the Court then issues an order compelling production, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

In *Legal Voice*, the Ninth Circuit adopted the D.C. Circuit's analysis of Rule 45(d)(2)(B)(ii) and held that fee-shifting is mandatory if the costs of compliance are significant. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). "Thus, when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *Id*. If the expense is significant, the Court must shift costs to the party serving the subpoena until the burden is no longer "significant." *Id*.

**III.    Discussion**

    **a.  The P&A Agreement**

The FDIC argues that Rule 45 does not apply because the P&A Agreement sets out the parties' whole agreement for subpoena compliance and paying costs. The P&A Agreement provides in part:

> 6.3    Preservation of Records. The Assuming Bank agrees that it will preserve and maintain for the joint benefit of the Receiver, the Corporation and the Assuming Bank, all Records of which it has custody for such period as either the Receiver or the Corporation in its discretion may require, until directed otherwise,

---

[1] The language presently found in subsection (d) of Rule 45 was originally listed in Rule 45(c), but moved to subsection (d) in 2013. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1181 n.1 (9th Cir. 2013).

> in writing, by the Receiver or Corporation. The Assuming Bank shall have the primary responsibility to respond to subpoenas, discovery requests, and other similar official inquiries with respect to the Records of which it has custody.
>
> 6.4 Access to Records: Copies. The Assuming Bank agrees to permit the Receiver and the Corporation access to all Records of which the Assuming Bank has custody, and to use, inspect, make extracts from or request copies of any such Records in the manner and to the extent requested, and to duplicate, in the discretion of the Receiver or the Corporation, any Record in the form of microfilm or microfiche pertaining to Deposit account relationships; provided, that in the event that the Failed Bank maintained one or more duplicate copies of such microfilm or microfiche Records, the Assuming Bank hereby assigns, transfers, and conveys to the Corporation one such duplicate copy of each such Record without cost to the Corporation, and agrees to deliver to the Corporation all Records assigned and transferred to the Corporation under this Article VI as soon as practicable on or after the date of this Agreement. The party requesting a copy of any Record shall bear the cost (based on standard accepted industry charges to the extent applicable, as determined by the Receiver) for providing such duplicate Records. A copy of each record requested shall be provided as soon as practicable by the party having custody thereof.

P&A Agreement §§ 6.3-6.4.

The FDIC argues that because the P&A Agreement addresses retention of records, handling of subpoenas, and payment of duplication costs, it supplants the obligations of Rule 45 between the FDIC and Chase. Therefore, a preliminary consideration is whether the parties can mutually agree to modify the cost provisions of Rule 45. The Court finds the parties do have this power.

First, Federal Rule of Civil Procedure 29(b) permits parties to stipulate to modify "procedures governing or limiting discovery," although extensions of time affecting case

deadlines require court approval.  Fed. R. Civ. P. 29(b).  The Rules do not specify the scope of Rule 29(b), but there are good reasons for finding it relevant to Rule 45(c).  First, the Advisory Notes to the 1991 Amendments state that Rule 45(c), then new, "is not intended to diminish rights conferred by Rules 26-37 or any other authority."  Fed. R. Civ. P. 45, 1991 Advisory Committee's Notes.  Second, the Rule 45 Commentaries specifically acknowledge the close relationship between Rule 45 and the discovery rules: "Rule 37 is a component of the 'Depositions and Discovery' segment (Part V) of the Rules, embracing Rules 26-37. That part interplays with Rule 45 frequently, an interplay that will be noted at a number of junctures in the ensuing Commentaries."  Fed. R. Civ. P. 45, Commentaries Subdivision (e).

      Second, when courts do deny efforts to modify the effect of the Federal Rules of Civil Procedure, the issues in question have broad consequences for the court or the public at large. For example, courts are reticent to approve stipulations that narrow the scope of discovery available to one party.  *See I/P Engine, Inc. v. AOL, Inc.*, 283 F.R.D. 322, 325 (E.D. Va. 2012) ("This Court has the authority to reject a Rule 29 stipulation that serves to thwart, rather than promote, full disclosure.") (collecting cases).  Similarly, courts are wary of stipulations to keep information sealed and confidential from third parties or the general public.  *See Sonnino v. Univ. of Kansas Hosp. Auth.*, CIV.A.02-2576-KHV-DJ, 2004 WL 769325, at *3 (D. Kan. Apr. 8, 2004) ("Although a settlement agreement contains a confidentiality provision, litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality[.]"); *Burda Media, Inc. v. Blumenberg*, 97 CIV. 7167 (RWS), 1999 WL 413469, at *3 (S.D.N.Y. June 21, 1999) *superseded by Rule on other grounds by* 2000 Amendments to Rule 26(b)(1) ("[L]itigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality[.]"); *Griffin v. Mashariki*, 96 CIV. 6400 (DC), 1997 WL 756914, at *2 (S.D.N.Y. Dec. 8, 1997) ("[T]he mere fact that the settling parties agreed to maintain the confidentiality of part of the settlement, Gilbert's statement, cannot serve to shield that statement from discovery.").

      But where the stipulation or agreement at issue concerns fundamental tenets of discovery, courts do consider and apply parties' stipulations.  *See Racine Ed. Ass'n v. Racine Unified Sch.*

1 *Dist.*, 82 F.R.D. 461, 463 (E.D. Wis. 1979) ("I construe the agreement of the parties on the record at the February 21, 1979, deposition as a stipulation to modify the method for requesting production of documents under Rule 34, Federal Rules of Civil Procedure."). In *Angell v. Shawmut*, the court did not enforce Rule 45 because the moving party had failed to timely object to the subpoenas. *Angell v. Shawmut Bank Connecticut Nat. Ass'n*, 153 F.R.D. 585, 590 (M.D.N.C. 1994). However, the parties had made a binding agreement "wherein respondent promised to reimburse petitioners for 'the reasonable costs of copying documents.'" *Id*. Although Rule 45 did not apply, the Court analyzed the obligations of the parties under their private agreement, stating that: "Private agreements save time and expense for the parties and valuable court time as well. Therefore, it is in the interest of justice for this Court to enforce such agreements, under its inherent authority, even though they are not mentioned in Rule 45." *Id*.

*Angell* does not address what should happen if the parties had timely objected and also had a separate agreement. It does suggest, however, that private agreements should be considered and honored by the courts. Chase protests that no Ninth Circuit precedent acknowledges an agreement or contract as a method of changing the cost-shifting provisions of the Federal Rules. On the other hand, the Court is not aware of any Ninth Circuit precedent considering this practice and prohibiting it. *Legal Voice* does state that cost-shifting is "mandatory," but does not address whether the parties may alter the requirements of Rule 45 through agreement. This is not a situation in which the Court is exercising any discretion to decide whether fees are owed. Instead, the Court finds only that the parties entered into a separate binding agreement that addresses the substance of Rule 45(d)(2)(B)(ii)'s requirements. Because their arrangement covers costs of subpoena compliance, Rule 45(d)(2)(B)(ii) is simply inapposite.

Normally, the Court would now turn to the P&A Agreement to determine whether it mandates that the FDIC reimburse Chase. However, this exact issue is presently being litigated in the District Court for the District of Columbia in the case *JPMorgan Chase Bank, National Association v. Federal Deposit Insurance Corporation, et al.*, 1:13-cv-01997 (D.D.C.). In the

*Chase v. FDIC* matter, Chase filed a complaint in December 2013 seeking indemnification from the FDIC under the P&A Agreement. *See Chase v. FDIC* Compl. (Dkt. 1) ¶ 1. In a section of the Complaint labeled "Fees and Costs Relating to Government Investigations and Subpoenas," Chase alleges the following:

> 69. Similarly, JPMC has also incurred substantial fees and costs in responding to the FDIC-Receiver's own requests to provide it WMB documents for use in lawsuits and investigations by the FDIC-Receiver. In the P&A Agreement, the FDIC-Receiver expressly agreed to "bear the cost" of complying with its requests. (P&A § 6.4.) These requests include, but are not limited to, requests in connection with FDIC-Receiver v. LSI Appraisal, UC, pending in the U.S. District Court for the Central District of California, No. SACV11-706; FDIC-Receiver v. CoreLogic Valuation Services, LLC, pending in the U.S. District Court for the Central District of California . . .

*Chase v. FDIC* Compl. ¶¶ 66-69. In this same section of the Complaint, Chase alleges that, "[u]nder the P&A Agreement, JPMC agreed to maintain WMB's documents 'for the joint benefit of the Receiver, the Corporation, and the Assuming Bank.' (P&A, § 6.3.)" *Id*. ¶ 68.

The precise parts of the P&A Agreement that require interpretation, §§ 6.3 and 6.4, are directly at issue in the D.C. action. For the Court to determine whether these costs are covered by the P&A Agreement, therefore, would be to interpret the P&A Agreement and make findings that would directly impinge on the issues before the D.C. District Court at this time. This creates a significant risk of conflicting findings and would interfere with that lawsuit. Therefore, the Court declines to make such a determination at this time.

### b. Defendants LSI and CoreLogic

Defendants LSI and CoreLogic are not the targets of Chase's motions. However, the Defendants contest any possibility that the FDIC might claim cost-sharing between them. Because the Court does not finally resolve this issue at this time, the Court makes no determination on this question. The Court does note, however, that the settlement agreements

between the FDIC and the Defendants appear to foreclose any claims by the FDIC against CoreLogic and LSI.

**IV. Disposition**

Because the P&A Agreement governs the legal questions at issue, and those questions are presently being litigated in another district court, the Court DENIES WITHOUT PREJUDICE the motions for costs. Should the D.C. litigation fail to resolve this question, Chase shall have thirty days from the resolution of that case to refile its motions in the *LSI* and *CoreLogic* cases.

DATED: July 21, 2014

_____

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE